Andre **WILLIAMS** and Romain Odessa Carter, Appellants (Defendants below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 1278S281.

Supreme Court of Indiana.

Oct. 2, 1979.

John D. Clouse and Michael C. Keating, Evansville, for appellants.

Theodore L. Sendak, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

Defendant Andre Williams, was convicted by a jury of four counts of armed robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1979), and one count of attempted involuntary manslaughter, Ind.Code § 35–42–1–4 (Burns 1979), and sentenced to fifteen years on each armed robbery count and five years for attempt, all sentences to run concurrently. Defendant, Romain Odessa Carter, was convicted by the same jury of four counts of theft, a class D felony, Ind.Code § 35–43–4–2 (Burns 1979), and sentenced to four years on each count, those sentences to run concurrently. They now appeal raising the following issues:

1. Whether the warrantless search of defendants' car constituted an illegal search and seizure in violation of the Fourth Amendment to the United States Constitution;

2. Whether the in-court identifications of defendant Williams were constitutionally tainted by a pretrial show-up or the products of an unlawful search;

3. Whether the trial court erred in overruling defendant Williams's motion for judgment on the evidence with respect to the attempted murder charge, and whether defendant Williams's conviction of attempted involuntary manslaughter is supported by the evidence;

4. Whether the trial court erred in instructing the jury as to its duty and in giving the jury verdict forms which did not give the jury the right to choose the sentence;

5. Whether the trial court erred in giving the state's tendered instruction and refusing defendants' instruction on the issue of flight;

6. Whether the evidence is sufficient to sustain the theft conviction of defendant Carter;

7. Whether the trial court erred in overruling defendants' motion to dismiss; and

8. Whether the trial court erred in sentencing defendant Carter.

The facts most favorable to the state follow.

On March 21, 1978, defendant Williams, wearing a dark ski mask, entered the Old National Bank in Evansville, Indiana. He clicked a short barreled revolver twice in an attempt to fire shots signalling a robbery. When the gun failed to fire, he announced that a robbery was in progress. Williams approached the bank manager and warned her not to sound the alarm, which, unbeknownst to Williams, she had already done.

Williams then ordered everyone to lie on the floor. He then approached each of four tellers and ordered them at gunpoint to fill a white pillow case with money. The tellers did as Williams ordered, including marked "bait money" in the pillow case. The evidence showed that Williams discharged his weapon once in the bank, although no one was injured. Williams then fled the bank.

Assistant bank manager, Ronald McConnell, chased Williams down an alley and a street. When Williams noticed his pursuer, he turned and fired his gun a second time. McConnell ducked safely behind a tree. A passing motorist observed Williams fire the gun, run to a silver-blue Camaro, driven by defendant Carter, and jump into the trunk. The motorist recorded the license number and relayed the information to McConnell who hailed a police vehicle and gave the police officer the information. A general police broadcast alerted several police officers to this information and a chase ensued on United States Highway 41 involving the Camaro, Evansville police, state police and the FBI.

Defendant Carter did not pull over until police boxed in her vehicle. She was immediately arrested and handcuffed. Police were then informed, over the radio, that the suspect had jumped in the trunk. One officer tapped the trunk of the vehicle and received acknowledgment from Williams. Carter did not have the key to the trunk so police pried it open. Inside they found Williams, a ski cap, a revolver, two spent cartridges, one unused cartridge and a white pillow case with money in it, all of which were later admitted into evidence at trial.

Two officers were driving Williams to the police station when they received a radio call telling them to take Williams back to the bank and secure witness identification. Williams, handcuffed and shackled, was removed from the squad car and stood up in front of bank personnel. Williams was then taken to the police station and booked. His clothes were removed for purposes of placing them into evidence.

I.

Defendants first allege that the warrantless search of their getaway car constituted an illegal search and the seizure of items in the trunk constituted an illegal seizure under the Fourth Amendment to the United States Constitution. We do not agree.

This Court has held that where police have probable cause to believe that an automobile contains instrumentalities and evi-

dence of a crime, they may search that automobile without a warrant. *Montague v. State,* (1977) 266 Ind. 51, 360 N.E.2d 181; *Brown v. State,* (1976) 264 Ind. 484, 346 N.E.2d 559. In *Brown* we held:

"[W]e conclude that the officers had probable cause to believe that seizable items would be found inside the car. They knew that a holdup had taken place, and that a shot had been fired. Yet no gun had been found with the suspect. It was reasonable, under such circumstances, for the officers to search the vehicle for instrumentalities and evidence of the crime." 264 Ind. at 489, 346 N.E.2d at 561.

Courts have consistently sustained police intrusions into automobiles in lawful police custody. The United States Supreme Court in *South Dakota v. Opperman,* (1977) 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000, ruled that:

"the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible." 428 U.S. at 367, 96 S.Ct. at 3096, 49 L.Ed.2d at 1004.

The United States Supreme Court also noted the low expectation of privacy associated with automobiles because of the public nature of auto travel. *Ibid.*

■ Furthermore, the police may search a vehicle in order to protect themselves and others from danger. *South Dakota v. Opperman, supra; Cooper v. California,* (1967) 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730. Here, the police had probable cause to believe that defendant Williams was in trunk of the Camaro and the knock on the trunk confirmed this fact. Williams was known to be armed and was known to have used his weapon. The police acted prudently, lawfully and efficiently in seizing defendant and his effects from the trunk. Besides, it would seem ludicrous to tow the car to the police station and obtain a warrant with Williams bouncing around in the back. Had they failed to extricate Williams from the close confines of the trunk, we would likely be deciding a police brutality issue for such failure.

## II.

Defendant Williams next argues that the in-court identifications of him by three witnesses were unconstitutionally tainted by a pretrial show-up and that the in-court identifications by two witnesses were the products of an illegal search. We have already found that the search of which defendant complains was legal and, therefore, we will only address the question of the pretrial show-up.

■ Both the United States Supreme Court and this Court have held that identification procedures which are so suggestive as to give rise to a substantial likelihood of misidentification violate a defendant's due process rights. *Simmons v. U. S.,* (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *Sawyer v. State,* (1973) 260 Ind. 597, 298 N.E.2d 440. We have found that the identification procedures are unduly suggestive if police inform witnesses that arrested suspects are among those included in a photographic display, *Sawyer v. State, supra,* or a lineup, *Whitt v. State,* (1977) 266 Ind. 211, 361 N.E.2d 913. This rule holds, *a fortiori,* when a witness is shown only one photograph, *Parker v. State,* (1976) 265 Ind. 595, 358 N.E.2d 110, or when only one person is shown in a show-up one and one-half days after the crime, *Zion v. State,* (1977) 266 Ind. 563, 365 N.E.2d 766. However, while it is clear that a one-on-one confrontation between suspect and victim is as a general proposition very suggestive, *Cooper v. State,* (1977) 265 Ind. 700, 359 N.E.2d 532, it is not always unnecessarily suggestive, *Zion v. State, supra; Dewey v. State,* (1976) 264 Ind. 403, 345 N.E.2d 842. The value of the witness's observing the suspect while the image of the offender is fresh in his mind has been held to make some immediate identifications not unnecessarily suggestive. *Poindexter v. State,* (1978) Ind., 374 N.E.2d 509; *Dillard v. State,* (1971) 257 Ind. 282, 274 N.E.2d 387; *McPhearson v. State,* (1969) 253 Ind. 254, 253 N.E.2d 226; *Lewis v. State,* (1969) 252 Ind. 454, 250 N.E.2d 358. While there were some suggestive factors

unavoidably involved in the instant confrontation, it was not unnecessarily suggestive.

■ Furthermore, this Court has adopted the "independent basis" test when dealing with an in-court identification which is potentially tainted by an unconstitutionally suggestive pretrial show-up. Identifications which are subsequent to the suggestive procedure need be excluded only if the original impropriety is likely to result in later misidentification. *Poindexter v. State, supra.* In the case at bar witnesses Hahn and Bohnert had seen defendant sans ski mask before and during the commission of the crime and, therefore, had adequate independent bases for their identification of defendant. Witness Geiss identified defendant only as the man police brought back in the bank and not as the man who held up the bank. We do not find the in-court identifications of defendant to be unconstitutionally tainted or otherwise legally defective.

### III.

■ Defendant Williams claims that the trial court erred in overruling his motion for directed verdict regarding the charge of attempted murder. In reviewing this allegation of error, we will find error in the overruling of a motion for directed verdict only if there is a total lack of evidence on some essential issue, or where the evidence is susceptible of only one inference, and that being in favor of the accused. *Carroll v. State,* (1975) 263 Ind. 696, 338 N.E.2d 264.

Defendant points out that the only evidence which supports the charge consisted of the testimony of three witnesses. First, the potential victim, Ronald McConnell, testified that he chased defendant Williams after the robbery and that Williams stopped and pointed his gun at McConnell. McConnell could not say whether Williams discharged the weapon. Another witness testified that he saw Williams shoot in the direction of Weinbach, the street from which Williams had just run, the same path along which McConnell was chasing him. The third witness testified that defendant

Williams shot his gun in the direction of McConnell.

Ind.Code § 35–42–1–1 (Burns 1979) provides:

"A person who:

(1) Knowingly or intentionally kills another human being; or

(2) Kills another human being while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery; commits murder, a felony."

Ind.Code § 35–41–5–1(a) (Burns 1979) provides:

"A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted. However, an attempt to commit murder is a class A felony."

■ Knowledge or intent may be inferred from the facts and circumstances presented in each case. *Capps v. State,* (1972) 258 Ind. 565, 282 N.E.2d 833.

"Intent . . . may be inferred from the deliberate use of a deadly weapon in a manner calculated to cause death." *Vaughn v. State,* (1972) 259 Ind. 157, 159, 284 N.E.2d 765, 766.

The evidence in the case at bar is sufficient to support an inference that Williams intended to kill Ron McConnell and took a substantial step toward carrying out that intent. The inferences to be drawn from this evidence were properly put to the jury.

■ The jury found defendant Williams guilty of attempted involuntary manslaughter, a lesser included offense of attempted murder, and said verdict was well within the prerogative of the jury. However, defendant asserts that the jury's verdict is defective in that the evidence at trial supported only the charge of robbery, a class B felony. Ind.Code § 35–42–1–4 provides that a person commits involuntary manslaughter if he kills someone while

committing a class C felony, a class D felony or a class A misdemeanor that inherently poses a risk of serious bodily injury or battery. We are not swayed by this argument. The fact that additional elements of defendant's robbery make his a class B felony does not absolve him of the crime of attempted involuntary manslaughter. By committing robbery while armed, a class B felony, defendant necessarily committed the lesser included offense of robbery, a class C felony. We find the evidence sufficient to sustain defendant Williams's conviction for attempted involuntary manslaughter.

### IV.

■ Defendant claims the trial court erred in not instructing the jury as to sentences under the relevant offenses. This Court has long held that a defendant's right to trial by jury is not offended by a statutory scheme which does not require the jury to fix the punishment of the defendant. *Skelton v. State*, (1898) 149 Ind. 641, 49 N.E. 901; *Miller v. State*, (1898) 149 Ind. 607, 49 N.E. 894. Recently this Court has held that a jury must be instructed only upon matters of law which are necessary for their information in giving their verdict. Ind.Code § 35–1–35–1 (Burns 1979). Since juries may no longer fulfill any function regarding sentencing, the amount of penalty prescribed by the legislature is irrelevant to their deliberations. *Debose v. State*, (1979) Ind., 389 N.E.2d 272.

### V.

■ Defendants next urge that the trial court erred in refusing their tendered instruction on the issue of flight and in giving the state's flight instruction. In determining whether an instruction has been properly refused, this Court must determine whether the tendered instruction correctly states the law, whether evidence in the record supports the giving of the tendered instruction, and whether the substance of the tendered instruction is covered by other instructions which are given. *Davis v. State*, (1976) 265 Ind. 476, 355 N.E.2d 836.

■ Defendants' tendered instructions would have added the concepts that flight can be consistent with innocence and that a feeling of guilt does not necessarily equate with actual guilt. Both of these concepts have to do with the weight the jury should give to the evidence of flight. The court covered these concepts in instructing the jury that flight is a circumstance which a jury may consider and that the jurors are the sole judges of the facts.

### VI.

Defendant Carter claims that the evidence was insufficient to sustain her convictions for theft. She claims that there was no evidence placing her at or near the scene of the crime and that the only identification of her as driver of the getaway car was when she and Williams were apprehended but not when Williams entered the car.

■ When there is substantial evidence of probative value supporting the jury's verdict, the conviction will not be set aside. *Faught v. State*, (1979) Ind., 390 N.E.2d 1011; *Henderson v. State*, (1976) 264 Ind. 334, 343 N.E.2d 776. It is clear that a person who intentionally aids another person in committing an offense can be tried and convicted as a principal in the crime. West's Ann.Ind.Code § 35–41–2–4 (1978).

■ The evidence in the case at bar easily supports the inference that Carter was the driver of the getaway car both at the time of apprehension and the time of the crime although her culpability is not dependent upon this inference. Her participation in the scheme of escape is adequate to establish her culpability. The law is clear that a conviction may be sustained on circumstantial evidence alone. *Grigsby v. State*, (1978) Ind., 371 N.E.2d 384. An accused's presence at the time and place of the commission of the crime is not required. *Saret v. State*, (1975) 166 Ind.App. 114, 333 N.E.2d 920. We find substantial evidence of probative value in the record to sustain defendant Carter's convictions.

## VII.

Defendants allege that the trial court erred in overruling their motion to dismiss the charges. Defendants attack the informations on a number of grounds.

First, defendant Williams alleges that information number six, charging him with attempted murder, is defective in that it does not allege that Williams knowingly attempted the crime of murder. Indiana's attempt statute provides in relevant part:

"A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." Ind.Code § 35–41–5–1(a) (Burns 1979).

The culpability for the commission of murder consists of knowingly or intentionally killing another human being. Ind.Code § 35–42–1–1. This Court has held that:

"A defendant in a criminal trial is entitled to be informed specifically of the crime or crimes with which he is charged so that he may be able to intelligently prepare a defense." Dorsey v. State, (1970) 254 Ind. 409, 412–13, 260 N.E.2d 800, 802–3.

The Sixth Amendment to the United States Constitution and Article I, § 13 of the Indiana Constitution require that a defendant be informed of the nature and cause of the accusation against him. We believe both of these standards were met in the case at bar when it was charged in the information that defendant Williams:

"did attempt to commit the crime of knowingly killing a human being, to-wit: Ron McConnell by knowingly pointing a pistol loaded with gunpowder and metal bullets at the person of Ron McConnell and knowingly discharging a shot from the aforesaid pistol toward the person of Ron McConnell which conduct constituted a substantial step toward the commission of said crime of murder, in violation of I.C. 35–41–5–1 and I.C. 35–42–1–1(1)."

Defendant Williams claims that the term "knowingly" in Ind.Code § 35–42–1–1 (Burns 1979) and as it appears in the information failed to apprise him of the nature and cause of the accusation against him. He claims that the statutory definition of the term is indecipherable.

"A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2(b) (Burns 1979).

We agree that the definition leaves something to be desired. Nevertheless, we are not convinced that a defense cannot be constructed because of the use of the term "knowingly," a word in common usage in the English language. In scrutinizing an information for clarity of the accusation the words of the information must be construed according to their common usage. Dorsey v. State, supra.

Defendants moved for dismissal based on sentencing provisions under Indiana law. They argue that the sentencing provisions allow for cruel and unusual punishment, that the wide range of penalties in all classes of felonies make it possible that one could receive a more severe penalty for a lesser included offense than if that person had been convicted of the greater offense and that the wide latitude and lack of standards provided in the sentencing statutes invite discrimination.

On appeal defendants do not show particularly how they have been harmed by these alleged deficiencies in the statutes. Nevertheless, we have held that the Eighth Amendment to the United States Constitution and Article I, § 16 of the Indiana Constitution require only that the maximum sentence for a lesser included offense not exceed the maximum sentence for the greater offense. Hobbs v. State, (1969) 253 Ind. 195, 252 N.E.2d 498; Dembowski v. State, (1968) 251 Ind. 250, 240 N.E.2d 815. Furthermore, we find that sentencing under our current criminal code appropriately apportions penalties to the nature of the offense as required by Article I, § 16 of the Indiana Constitution.

Defendants sought dismissal of the charges arguing that the acts allegedly con-

stituting four counts of armed robbery actually only constituted one count of armed robbery and, in the case of defendant Carter, one count of theft. Since at least one armed robbery and one theft were proved at trial, we will now decide whether the eight convictions or only two should stand.

Defendant Williams argues that his conduct constituted only one offense of armed robbery. He claims that he robbed the bank and not four individual tellers. This is a question of first impression before this Court.

Ind.Code § 35–42–5–1 (Burns 1979) provides:

> "A person who knowingly or intentionally takes property from another person or from the presence of another person: (1) By using or threatening the use of force on any person; or
> (2) By putting any person in fear; commits robbery, a class C felony. However, the offense is a class B felony if it is committed while armed with a deadly weapon, and a class A felony if it results in either bodily injury or serious bodily injury to any other person."

We must determine whether, under the law, taking a bank's money from each of four different tellers in one branch at the same time is one or four unlawful acts under this statute.

The only comparable Indiana case law involves the "single larceny doctrine." In *Furnace v. State*, (1899) 153 Ind. 93, 54 Ind. 441, the Supreme Court held that taking money from each of two individuals at the same time and place constituted only one offense of larceny. However, that case deals with what is now theft and not robbery. Theft involves exerting unauthorized control over another's property, and does not involve taking from another by use of force or by putting a person in fear. Ind. Code § 35–43–4–2 (Burns 1979).

Federal courts have ruled on this issue in cases involving bank robberies. 18 U.S.C.A. § 2113 (1970) provides in relevant part:

> "(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; . . .

> "Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

The elements of this statute are substantially similar to the elements of armed robbery under Indiana law. The only exception is that the money taken must belong to a bank, credit union, or savings and loan association. In *United States v. Canty*, (1972) 152 U.S.App.D.C. 103, 469 F.2d 114, the defendant had been charged with one count of robbery for each of four tellers from whom he received money. The Court said:

> "Although there seem to be no cases precisely on point, we cannot agree with the Government's position that the robbery of each teller constitutes a separate 'taking' within the meaning of the statute. While it may be true that under general theft and robbery statutes, a defendant may be punished under separate counts for taking money from different people in the same transaction, the statute here is not for theft or robbery against the person generally. The crime is *bank* robbery, and the statute is entitled 'Bank Robbery and Incidental Crimes.' There is no doubt here that only one transaction took place and that only one bank was robbed." [Emphasis in original.] 469 F.2d at 126.

The *Canty* case establishes that a defendant cannot be convicted on several counts when he takes money from one bank. The above language leaves open the question of whether one can be convicted of more than one count when taking money from several different persons in the same transaction under a general robbery statute. Nevertheless, that Circuit looks to whether "stripped down to the basic reality, the robbery . . . constituted a unitary transaction." *United States v. Hopkins*, (1972) 150 U.S.App.D.C. 307, 314, 464 F.2d

816, 823. See also *United States v. Fleming*, (7th Cir. 1974) 504 F.2d 1045.

Under a prior statute, 12 U.S.C.A. § 588b (1945) (repealed effective September 1, 1948),[1] the Ninth Circuit Court of Appeals held that the defendant was guilty of only one offense even though he jeopardized the lives of three separate persons in the course of a bank robbery. *Dimenza v. Johnston*, (9th Cir. 1942) 130 F.2d 465. In denying rehearing that Court said:

> "If the lives of a dozen persons were imperiled the fact that the draftsman chose to name each individual in a separate count rather than to include them all in one count, . . . did not constitute each count a separate and distinct bank robbery, . . . ." *Dimenza v. Johnston*, (9th Cir. 1942) 131 F.2d 47, 48.

Under bank robbery statutes and more general criminal laws, the federal courts have applied the "rule of lenity" as provided in *Bell v. United States*, (1955) 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905, where the Supreme Court held that:

> "[i]t may fairly be said to a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment." 349 U.S. at 83, 75 S.Ct. at 622, 99 L.Ed. at 910.

In *United States v. Alexander*, (1972) 152 U.S.App.D.C. 371, 471 F.2d 923, two defendants were charged with one count of assault for each of the four persons in whose direction defendants discharged their weapons. Despite the fact that each of the four individuals was injured, the Court held:

> "that where by a single act or course of action a defendant has put in fear different members of a group towards which

the action is collectively directed, he is guilty of but one offense." 471 F.2d at 933.

While prosecutions for bank robberies under state statutes are rare given the federal jurisdiction over the subject matter, the law involved would be logically identical to that which is applicable when more than one employee hands over a single business's money or property to a robber. In *State v. Potter*, (1974) 285 N.C. 238, 204 S.E.2d 649, the defendant held up a market forcing two cashiers to empty their cash registers. The court took note of the fact that each cashier had custody of the money for the employer and the right to retain possession of it against robbery. Nevertheless, the North Carolina Supreme Court held that only one robbery conviction could stand. The court reached this conclusion notwithstanding the fact that the statute was drafted in terms of endangering the life of "a person." N.C. Gen.Stat. § 14–87 (1969). An Illinois court has reached a similar result where a defendant robbed a market, taking the market's money from the manager and two cashiers. *People v. Nicks*, (1974) 23 Ill.App.3d 435, 319 N.E.2d 531. The Illinois Fifth District Court of Appeals has questioned *Nicks* as being contrary to the mainstream of cases on the subject. *People v. Terry*, (1976) 38 Ill.App.3d 517, 347 N.E.2d 869. However, *Terry* and other cases in the "mainstream" involve not only the robbery of several persons, but the taking of valuables belonging to those different individuals and not a common employer. *People v. Prim*, (1972) 53 Ill.2d 62, 289 N.E.2d 601.

 We hold that an individual who robs a business establishment, taking that business's money from four employees, can

---

1. "§ 588b. Robbery of bank; assault in committing or attempting to commit bank robbery; receiving or disposing of stolen goods
 "(a) Whoever, by force and violence, or by putting in fear, feloniously takes, or feloniously attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank; . . . shall be fined not more than $5,000 or imprisoned not more than twenty years, or both; . . . .

 "(b) Whoever, in committing, or in attempting to commit, any offense defined in subsection (a) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not less than $1,000 nor more than $10,000 or imprisoned not less than five years nor more than twenty-five years, or both."

be convicted of only one count of armed robbery under Ind.Code § 35–42–5–1 (Burns 1979). Since defendant Carter was charged as an accomplice under the same set of facts and because her convictions for theft are covered by the single larceny doctrine, *Furnace v. State, supra,* she can be convicted of only theft.

## VIII.

 Defendant Carter claims that she was sentenced erroneously. The trial court sentenced Carter to four years' imprisonment, two of those years being added for aggravating circumstances. In pronouncing sentence, the court said:

"her offense was one in which an armed robbery was perpetrated with the use of a deadly weapon and a threat to human life."

Ms. Carter asserts that this constitutes the offense charged and is therefore an improper factor for the judge to consider in determining what sentence to impose. We were faced with the same issue in *McNew v. State,* (1979) Ind., 391 N.E.2d 607, and held that the judge may consider the nature and circumstances of the crime committed under West's Ann.Ind.Code § 35–4.1–4–7(a) (1978). We do not find that in light of her actions defendant Carter's sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind.R.App.Rev.Sen. 2(1).

For the foregoing reasons, defendants' convictions and sentences imposed under Counts I and V are affirmed and the convictions and sentences imposed under Counts II, III and IV are hereby vacated.

Judgment of the trial court is affirmed in part and reversed in part.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.