**Donald C. BOYD, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–679A166.**

Court of Appeals of Indiana,
First District.

Nov. 20, 1979.

John D. Clouse and Michael C. Keating, Evansville, for defendant-appellant.

Theodore L. Sendak, Atty. Gen., Jeffrey K. Baldwin, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

LOWDERMILK, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellant Donald C. Boyd appeals from his conviction of voluntary manslaughter. Boyd challenges (1) the validity of the amended information, (2) the admission into evidence of a tape recorded confession, and (3) the trial court's rulings relating to instructions and arguments to the jury concerning the potential penalties involved.

We affirm.

## FACTS

Donald C. Boyd was charged with murder[1] after he fatally wounded Marvin Johnson on August 18, 1978. Boyd and Johnson had been arguing about some food stamps which Boyd believed Johnson had stolen from Boyd's sister. The argument resulted in Boyd's shooting Johnson with a .22 caliber rifle. Later that day, Boyd made a confession to the Evansville Police Department. The greater part of that confession was recorded on tape.

Boyd was convicted of voluntary manslaughter[2] and given a sentence of ten years. He now appeals his conviction.

## ISSUES

1. Whether the trial court erred in overruling Boyd's motion to dismiss the amended information.

2. Whether the trial court erred in admitting into evidence a partial, taped confession by Boyd.

3. Whether the trial court erred in failing to instruct the jury as to the penalties involved and in prohibiting counsel for the defendant from mentioning the penalties in final argument.

## DISCUSSION AND DECISION

*Issue One*

Boyd advances numerous arguments to show that the amended information should have been dismissed. He contends, first, that the record does not indicate that any notice of the amendment on September 6, 1978, was given to him by the court or the prosecutor. Consequently, Boyd concludes that the amendment procedure failed to comply with IC 1971, 35–3.1–1–5(d) (Burns Code Ed.).[3]

We note, initially, that in the case at bar the appropriate subsection of IC 35–3.1–1–5 is (b)[4] rather than (d), because the amendment of the information took place prior to Boyd's waiver of formal arraignment on September 19, 1978.[5] Consequently, Boyd was entitled to notice of the amendment, but he was not entitled to an opportunity to be heard. Moreover, the record shows that on September 6, 1978, the defendant, in person and by counsel, filed his motion to dismiss the information. The same entry indicates that the trial court sustained the motion to dismiss and granted the State leave to file an amended informa-

---

1. IC 1971, 35–42–1–1 (Burns Code Ed., Repl. 1979).

2. IC 1971, 35–42–1–3 (Burns Code Ed., Repl. 1979).

3. IC 35–3.1–1–5(d) provides as follows:
 "(d) Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. Upon permitting such amendment, the court shall, upon motion by the defendant, order any adjournment or postponement of the proceedings which may, by reason of such amendment,

be necessary to accord the defendant adequate opportunity to prepare his defense."

4. IC 35–3.1–1–5(b) provides as follows:
 "(b) The indictment or information may be amended in matters of substance or form by the prosecutor upon giving notice to the defendant and with the consent of the court, at any time before arraignment. When the information or indictment is amended, it shall be signed by the prosecuting attorney."

5. The arraignment was deferred, on motion of the defendant, on four occasions. The last date to which arraignment was deferred was September 21, 1978.

tion. We must conclude that Boyd and his attorney were present when the trial court granted the State permission to amend the complaint. If the record is inaccurate in this regard, Boyd has an ample remedy in Ind. Rules of Procedure, Appellate Rule 7.2(C), which provides for correction of the record. However, Boyd has not argued that there is a defect in the record. We hold that Boyd had adequate notice of the amendment of the information.

Boyd directs our attention to the allegation in the amended information that he "did knowingly kill another human being, . . . ." This language is similar to that found in the definition of "murder" in IC 1971, 35–42–1–1 (Burns Code Ed., Repl. 1979).[6] Boyd observes that the "longstanding and well understood requirement" of "intent" as an element of the crime of murder was replaced in the new penal code with the requirement that the defendant act "knowingly." Boyd acknowledges that IC 1971, 35–41–2–2(b) (Burns Code Ed., Repl.1979) defines "knowingly" in the following manner: "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." However, Boyd contends that this definition is insufficient to inform him of the nature and cause of the accusation against him, as required by the Sixth Amendment to the Constitution of the United States and Article 1, § 13 of the Constitution of Indiana.

■ Boyd's arguments on this point are not persuasive. It was well within the province of the General Assembly to redefine the crime of murder in this manner. *See Ledcke v. State,* (1973) 260 Ind. 382, 296 N.E.2d 412. Moreover, our Supreme Court recently rejected a similar challenge in *Williams v. State,* (1979) Ind., 395 N.E.2d 239, where the defendant argued that the information charging him with attempted murder should have been dismissed. Justice Hunter explained the Court's reasoning as follows:

"We agree that the definition leaves something to be desired. Nevertheless, we are not convinced that a defense cannot be constructed because of the use of the term 'knowingly,' a word in common usage in the English language. In scrutinizing an information for clarity of the accusation the words of the information must be construed according to their common usage. *Dorsey v. State, supra* [(1970) 254 Ind. 409, 260 N.E.2d 800]." (Our insertion)

Boyd was adequately apprised of the nature and cause of the accusation against him.

■ Boyd also argues that IC 1971, 35–50–1–1 and 35–50–1A–3 [7] (Burns Code Ed., Repl.1979), which provide that the court shall fix the sentence of a convicted felon, violate his right to a jury trial under the Sixth Amendment to the Constitution of the United States and Article 1, § 13 of the Constitution of Indiana. He reasons that those constitutional provisions do not specify which issues in a criminal prosecution the defendant is entitled to have tried by jury and that, therefore, the provisions should be read to afford a trial by jury in all aspects of the prosecution.

However, our Supreme Court in *Williams, supra,* reaffirmed the longstanding principle that "a defendant's right to trial by jury is not offended by a statutory scheme which does not require the jury to fix the punishment of the defendant." *See Skelton v. State,* (1898) 149 Ind. 641, 49 N.E. 901; *Proffitt v. Florida,* (1976) 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (opinion of Justices Stewart, Powell, and Stevens). Boyd was not entitled to have his sentence determined by the jury.

■ Boyd next raises a number of constitutional arguments relating to the sentencing provisions of our penal code. He states, first, that IC 1971, 35–50–2–3 through 35–

---

6. "35–42–1–1. MURDER.—A person who: (1) Knowingly or intentionally kills another human being; or (2) Kills another human being while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery; commits murder, a felony. . . . ."

7. Ind. Code 35–4.1–4–3 (Supp.1979).

50–2–7 (Burns Code Ed., Repl.1979) provide that a person convicted of a crime of a particular class shall serve a specified term, with a specified maximum number of years added or subtracted where the trial court finds aggravating or mitigating circumstances. Boyd further notes that in each of those code sections, with the exception of IC 1971, 35–50–2–6 (Burns Code Ed., Repl. 1979), the maximum number of years which may be added for aggravating circumstances exceeds the maximum number which may be subtracted for mitigating circumstances. This situation, Boyd asserts, violates Article 1, § 16 of the Constitution of Indiana, which says, in part: " * * * Cruel and unusual punishments shall not be inflicted. All penalties shall be proportioned to the nature of the offense." Boyd's argument is without merit, because, as the Supreme Court determined in *Williams, supra,* those sentencing provisions of the current penal code comply with Article 1, § 16 in this regard.

■ Secondly, Boyd argues that the wide latitude in possible penalties, coupled with a lack of standards for determining the appropriate weight to be given each aggravating or mitigating factor,[8] invites the imposition of discriminatory penalties. Boyd cites *Furman v. Georgia,* (1972) 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, to support his contention. This "unbridled discretion," he maintains, violates the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States and the due course of law and equal privileges and immunities provisions of Article 1, §§ 12 and 23 of the Constitution of Indiana.

We note at the outset that *Furman, supra,* is of no assistance to Boyd. In *Wilson v. State,* (1978) Ind., 374 N.E.2d 45, the defendant was found guilty of second degree murder and was given life imprisonment[9] by the jury.[10] Justice Pivarnik dealt with the issue of guidelines in sentencing at page 50 of 374 N.E.2d:

"Appellant further argues that the jury was not provided with adequate guidelines to choose between a life sentence and a lesser sentence of fifteen to twenty-five years in prison for the crime of second-degree murder. He argues that the lack of guidelines makes the jury's choice of the greater sentence cruel and unusual punishment under the concept of *Furman v. Georgia,* (1972) 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346. Appellant does not demonstrate that *Furman,* which dealt with the death penalty, applies to sentences of imprisonment for murder as are involved in this case. Neither is it demonstrated that *Furman* stands for any constitutional mandate of 'guidelines' for use by the jury any time the sentencing function is undertaken. We do not believe that *Furman* so applies, and find this argument to be without merit."

Although Wilson cited *Furman* in support of a cruel and unusual punishment argument in a situation where the jury determined the penalty, Justice Pivarnik's observations are applicable to Boyd's argument as well.

■ Furthermore, Boyd's allegation of constitutional violations has not established a ground for reversal. First of all, Boyd failed to present any kind of constitutional analysis to support his allegation. Moreover, Boyd has not shown that the consider-

8. IC 1971, 35–50–1A–7(b) and (c) (Ind. Code 35–4.1–4–7(b) and (c) (Supp.1979)) contain nonexclusive lists of aggravating and mitigating factors which the trial court may consider in setting the sentence.

9. The former second degree murder statute, IC 1971, 35–1–54–1 (Burns Code Ed.), providing for a sentence of either life imprisonment or imprisonment of not less than fifteen nor more than twenty-five years, was repealed effective October 1, 1977. The current murder provision

is IC 1971, 35–42–1–1 (Burns Code Ed., Repl. 1979) and the appropriate sentencing provision is IC 1971, 35–50–2–3 (Burns Code Ed., Repl. 1979).

10. Under former IC 1971, 35–8–2–1 through 35–8–2–3 (Burns Code Ed.) (repealed effective October 1, 1977), the jury determined the penalty in certain cases. The court now determines the penalty for all offenses. IC 1971, 35–50–1–1 (Burns Code Ed., Repl.1979).

ation of aggravating and mitigating circumstances under the statutory sentencing scheme has been prejudicial to him. Boyd was convicted of voluntary manslaughter, a class B felony. IC 1971, 35–42–1–3 (Burns Code Ed., Repl.1979). Under IC 1971, 35–50–2–5 (Burns Code Ed., Repl.1979), a conviction for a class B felony carries a basic sentence of ten years to which not more than ten years may be added for aggravating circumstances and from which not more than four years may be subtracted for mitigating circumstances. Boyd received the basic sentence of ten years. Consequently, we cannot see how Boyd's contention that the sentencing provisions invite the imposition of discriminatory penalties is material to his case.

■ Boyd next argues that under the sentencing provisions of our penal code, there is considerable overlap among the penalties for the different classes of felonies when time is added to the basic sentence for aggravating circumstances or subtracted from the basic sentence for mitigating circumstances. He contends that this overlap could result in the imposition of greater sentences for lesser included offenses. Thus, he concludes that the statutory sentencing scheme violates the proscription of cruel and unusual punishments found in Article 1, § 16 of the Constitution of Indiana and the Eight Amendment to the Constitution of the United States.

However, the Supreme Court was unimpressed by a similar argument in *Williams, supra.* As Justice Pivarnik said, the Eighth Amendment and Article 1, § 16 "require only that the maximum sentence for a lesser included offense not exceed the maximum sentence for the greater offense." Boyd has not demonstrated that the statutory sentencing scheme violates the rule stated in *Williams.*

We find no reversible error in the trial court's overruling of Boyd's motion to dismiss the amended information.

*Issue Two*

■ After the shooting incident, Boyd turned himself in at the Vanderburgh County Sheriff's Department. He was tak-en to the Evansville Police Department where he was advised of his *Miranda* rights and signed a written waiver of rights. He then made a statement to Lt. Frank Gulledge concerning the events preceding and during the incident in which he admitted shooting Marvin Johnson. Approximately thirty to sixty seconds after Boyd began his confession, Lt. Gulledge interrupted him and asked whether Boyd would object if he turned on a tape recorder. Boyd said he would not object, so Lt. Gulledge activated the tape recorder and Boyd continued with his confession.

Boyd now argues that the admission into evidence of the taped portion of his confession denied him due process of law under the Fourteenth Amendment to the Constitution of the United States and due course of law under Article 1, § 12 of the Constitution of Indiana. Boyd testified that during the unrecorded portion of his confession he had told Lt. Gulledge the just prior to his shooting Johnson, Johnson had stuck his hand into his pocket as if to go for a gun. Officer Gulledge testified on rebuttal, however, that he did not remember Boyd's telling him that Johnson had his hand in his pocket. From this conflicting testimony, Boyd concludes that it was fundamentally unfair to admit the recorded portion of his confession into evidence. He contends that his self-defense argument was significantly prejudiced by the trial court's allowing the State to introduce the recorded portion of the confession and to deny that Boyd had also said that Johnson had reached for a gun.

Both Boyd and the State cite the case of *Mack v. State*, (1932) 203 Ind. 355, 374–75, 180 N.E. 279, 285, in which the Supreme Court said that "where a confession is introduced by the State, the accused has the right, if he desires, to require that the whole of the statement or conversation containing it shall go to the jury." Boyd also cites *United States v. Wenzel*, (4th Cir. 1962) 311 F.2d 164, for the proposition that where a confession is interrupted and the prosecutor attempts to introduce only a partial or incomplete statement, the partial

confession is inadmissible. Boyd acknowledges that the situations contemplated in *Mack* and *Wenzel* are different, but he argues that similar reasoning should apply to his case.

We agree with the State that the rule stated in *Mack*, which is closely related to the principles discussed in *Wenzel*, has been complied with here. Although not all of the confession was recorded, Boyd testified at trial with regard to the unrecorded portion of his conversation with Lt. Gulledge. Furthermore, during the recorded portion of the confession, Lt. Gulledge asked several open-ended questions which gave Boyd ample opportunity to repeat any details he might have given prior to the time the tape recorder was turned on. We find no unfairness or constitutional violations in the admission into evidence of the recorded part of Boyd's confession.

*Issue Three*

 Boyd maintains that the trial court erred in refusing to give the jury his instructions numbered one, six, and ten, which state the statutory penalties for murder, a class C felony, and a class B felony, respectively. He argues that the court's refusal to give those instructions violated Article 1, § 19 of the Constitution of Indiana, which states that the jury has "the right to determine the law and the facts" in criminal cases. He also contends that his right to a trial by jury under Article 1, § 13 of the Constitution of Indiana and the Sixth Amendment to the Constitution of the United States was thereby violated.

Boyd also alleges error in the court's jury instructions numbered five, six, seven, and eight, which gave the statutory definitions of murder, voluntary manslaughter, involuntary manslaughter, and reckless homicide, respectively. Boyd asserts that the court's failure to include the penalties with the definitions of those crimes deprives the jury of knowledge of a part of the law which it is expected to determine under Article 1, § 19, *supra*. He also argues that this incomplete statement of the law infringes upon his right to a jury trial.

The Supreme Court has already determined that the accused is not entitled, by virtue of Article 1, § 19, *supra*, to have the jury instructed with regard to the possible penalties under the new penal code. *Debose v. State*, (1979) Ind., 389 N.E.2d 272. Furthermore, the Court recently held that the defendant's right to trial by jury is not violated by the trial court's refusal to instruct the jury as to sentences. *Williams, supra*. These cases are dispositive of Boyd's contentions regarding the jury instructions which were refused and those which were given.

However, Boyd still contends that the trial court erred in granting the State's motion for a protective order to forbid Boyd's attorney to mention to the jury in his closing argument the penalties for the offense charged and any lesser included offenses. He argues that the jury probably discussed the possible penalties even without specific instructions, especially because some of the instructions defining the possible offenses distinguished between different classes of crimes. He also asserts that informing the jury of possible penalties would actually further the ends of justice and assist them to fully discharge their function of determining the law under Article 1, § 19, *supra*.

 A trial court has inherent power to control the proceedings. *Johns v. State*, (1968) 251 Ind. 172, 240 N.E.2d 60. We will not reverse the trial court's exercise of this power unless abuse of discretion has been demonstrated. Such abuse of discretion will only be found "if the court makes an erroneous conclusion that is clearly against logic and the natural inferences to be drawn therefrom." *Merry v. State*, (1975) 166 Ind.App. 199, 212, 335 N.E.2d 249, 258. In light of *Debose* and *Williams, supra*, we hold that the trial court acted well within the bounds of its discretion when it ordered Boyd's attorney not to mention the possible penalties in his closing argument.

Affirmed.

ROBERTSON and NEAL, JJ., concur.