**John BURCH and Larry O'Neal Harris, Appellants,**

v.

**STATE of Indiana, Appellee.**

**Nos. 282S60, 282S61.**

Supreme Court of Indiana.

July 7, 1983.

door broken and persons present. He summoned help. Accompanied by neighbors, he observed Edmonds walk off the porch. The group then proceeded to seize appellants who were standing inside the house at the broken door. Mr. Averett's wallet containing two hundred and forty dollars fell out of appellant Harris' pocket. At the same time appellant Burch took some articles out of his pocket and threw them on the porch. The police were then called, and upon arriving they discovered Averett's watch, cigarette lighter and cigarette case inside Harris' pocket.

At the subsequent bench trial appellants were convicted and Edmonds was acquitted. Pre-sentence reports were ordered by the court and the sentencing hearing was scheduled.

■ During their separate interviews with probation officers appellants gave a "Version of the Crime" and both took the position that they were innocent of wrongdoing. Each stated that he had been asked by Edmonds to help him move some of his belongings to his mother's house, and that he was engaged in this cooperative effort when discovered by James Averett. These statements were reduced to writing by the interviewer and included in the presentence reports. These reports were presented to the sentencing judge and considered by him in assessing the penalties. Appellants contend that standard warnings in safeguard of the privilege against self-incrimination and the right to counsel, required by *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, should have been given by the interviewer before these personal statements were taken, and that in the absence of such warnings, the use of them by the court below in sentencing was constitutional error.

■ Appellants rely primarily upon the recent case of *Estelle v. Smith,* (1981) 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359. There the defendant was charged with a capital crime. Pursuant to the suggestion that he was not competent to stand trial the court ordered a psychiatric examination. It

James R. Bielefeld, Crown Point, for appellants.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellants, John Burch and Larry O'Neal Harris, were tried jointly, convicted of burglary, a class B felony, and received identical sentences of twelve years. The issues raised on appeal for both are the same. The cases have been consolidated at this level. They contend first that the inclusion of personal statements in their pre-sentence reports was constitutional error and second that their sentences were violative of the Eighth Amendment and Article 1, Section 16, of the Indiana Constitution.

The direct evidence showed that upon returning to his residence in East Chicago, Indiana, one James Averett discovered his

was determined that he was so competent, and he was subsequently tried and found guilty. At the death penalty phase of the trial which followed, the psychiatrist who had interviewed him before trial was permitted to testify that the defendant was dangerous, a criterion supporting death. The court held that the use of the defendant's statements at the death hearing was violative of the privilege against self-incrimination and the right to counsel. There the defendant should have been advised of his constitutional rights as required by *Miranda v. Arizona, supra.*

Significant differences exist between the circumstances of the *Estelle* case and the one before us.

In this case the probation officers were gathering information from many sources, among them the defendant himself, for use by the judge in arriving at an individualized and appropriate sentence. Ind.Code §§ 35-4.1-4-9 and 10. The statements given by appellants were included in the reports and used for this purpose and no other. In *Estelle,* the statements given to the psychiatrist ended up being used by the State to meet its burden at the capital sentencing phase of the trial to prove dangerousness, and thus a quality of the defendant warranting the death penalty. In this case the State bore no burden of proof, and there was no issue critical to imposition of the death penalty involved. Appellants' statements were made in an interview ordered by the court while counsel was present and was therefore in a position to advise appellants about the legal consequences of their interviews and to even participate in the interviews.

■ The United States Court of Appeals, Ninth Circuit, held recently in *Baumann v. United States,* 692 F.2d 565 (9th Cir.1982), a case like the one before us, that the requirements of *Miranda* do not apply via *Estelle* to an interview of the defendant by a federal probation officer in preparing a pre-sentence report. That court was of the opinion that pre-sentence interviews do not involve inherently coercive pressures similar to those present during a pre-trial custodial

interrogation of the accused. It also considered the fact that the defendant's statement in a pre-sentence report is presented within a mix of many types of information to be used by the sentencing judge within a wide sentencing discretion. We would agree with these propositions and on like basis conclude that the practical concerns presented when custodial interrogation of the accused occurs, are not present at a routine pre-sentence interview and such an interview is not a critical stage of the proceeding requiring the presence of counsel so as to guarantee the fairness of the subsequent sentencing hearing.

■ The conclusion we reach, of course, does not mean that in any particular case, the defendant's version of events within a pre-sentence report cannot be challenged on Fifth Amendment grounds. *Gardner v. State,* (1979) 270 Ind. 627, 388 N.E.2d 513, recognizes the propriety of such a challenge. The sentencing court should refuse to consider the defendant's statement in a pre-sentence report where the statement is demonstrated to have been under all the circumstances, involuntary as induced by violence, threats, promises, or other improper influence. *Nacoff v. State,* (1971) 256 Ind. 97, 267 N.E.2d 165. Cf. *Yates v. State,* (1982) Ind.App., 429 N.E.2d 992. There is nothing presented in this case upon which to conclude that the choice of appellants to give the probation officers their own versions of events was other than free and voluntary. We, therefore, conclude that the use of the statements of these appellants by the trial judge in arriving at their sentences did not violate their *Miranda* rights.

■ It is next contended by appellants that their sentences are at odds with the Eighth Amendment to the United States Constitution and its Indiana counterpart, Article 1, Section 16. Regarding the protection provided by these provisions this Court has stated:

"Generally these prohibitions are proscriptions of punishments that are atrocities or obsolete, aimed at form rather

than duration, (citations omitted) or excessive in relation to the crime committed. (Citations omitted.) If a punishment (1) makes no measurable contribution to acceptable goals of punishment such that it constitutes nothing more than purposeless and needless imposition of pain and suffering or (2) is grossly disproportionate to the severity of the crime, it is excessive and unconstitutional. (Citations omitted.)" *Inman v. State,* (1979) 271 Ind. 491, 498, 393 N.E.2d 767, 772.

The breaking and entry of a dwelling with the intent to commit a felony in it, is by statute a class B felony, Ind.Code § 35–43–2–1, warranting a sentence within the range of from four to twenty years, a ten year term being designated as the basic one. Appellants received twelve year sentences. They argue that their crime resulted in minimal damage, and that their sentences were being based upon their prior criminal records, i.e., "who they are and not for what they did." Recently in *Frappier v. State,* (1983) Ind., 448 N.E.2d 1188, we reflected on the nature of burglary of a dwelling in relation to the restrictions of the constitutions on criminal punishments. We explained, as the trial judge in the court below did at sentencing, that this offense poses a threat of harm to the person as well as to property interests, and is established to afford protection for societal interests in the security of the home. We upheld a maximum sentence in that case. And in *Williams v. State,* (1979) 271 Ind. 656, 395 N.E.2d 239, we upheld the sentencing procedures under our current criminal code as being in furtherance of, rather than in contravention of, the constitutional policy of proportionality of criminal penalties. *Wells v. State,* (1980) Ind.App., 397 N.E.2d 1250.

Appellants also argue that the Indiana prison system is so crowded, understaffed, and provides so little in the form of educational and rehabilitative services as to render their sentences within the constitutional ban. The factual assertions at the base of the claim are sought to be supported by reference to an article appearing in a recent issue of a popular periodical. The issue is not presented in a manner susceptible of a rational judicial resolution.

Appellants next argue that their sentences are demonstrated to be constitutionally deficient upon comparison of them to two unrelated cases reported in a local newspaper, from which reports one could infer that the harm involved in each was greater, while the sentences were the same or less. As with the last treated assertion, the basis of the desired comparison is not present and even if it were, the inference is not necessary. There are a multitude of rational grounds for a favorable comparison of the cases.

The convictions are affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.