Elatha **FERGUSON**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 1079S266.

Supreme Court of Indiana.

June 5, 1980.

Rehearing Denied Aug. 25, 1980.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Elatha Ferguson was charged with two counts of robbery on October 30, 1978. The State then filed an additional Count charging defendant Ferguson with being an habitual offender. A jury found Ferguson guilty on both counts of robbery and then found him guilty of the offense of being an habitual offender. On July 6, 1979, the court sentenced Ferguson to ten (10) years on Count I, ten (10) years on Count II, and thirty (30) years on Count III, to be served consecutively. This appeal followed.

The appellant raises the following issues for our consideration regarding the identification procedures used in a pre-trial photographic identification, the sufficiency of the evidence to support his conviction, the sentencing procedures used, and the constitutionality of the habitual offender statute.

Joe Taylor, Manager of Sight and Sound TV Rentals on East 38th Street in Indianapolis, Indiana, was at work when a man came into the store and asked to fill out a rental application. He said he had to leave to obtain some information necessary to complete the form. When the man returned, another employee, Mr. Kellum, got up from his desk behind the counter to give him another application. Mr. Taylor heard a "thumping sound" and looked up to see

the man standing on the counter with a pistol pointed at Mr. Kellum. The gun was pointed at the middle of his forehead. Mr. Taylor and Mr. Kellum were told to drop their wallets and they were forced into the restroom. After a minute Mr. Kellum stepped out. The man screamed at him to get back or he would be shot. Several minutes later he left the restroom and told Mr. Taylor to call the police. Both wallets were gone. Mr. Taylor stated that his wallet contained a hundred dollar bill which he kept tucked in a corner for emergencies.

Martha Gross, a temporary secretary at Sight and Sound on the day of the robberies, testified that she was in the back of the store when a man came in asking to be helped. She directed him to the front of the store and went home. She later identified Ferguson as the man she saw on the day of the robberies. She testified that she was within inches of him and that it was light.

On the evening of the robberies, August 11, 1978, Mr. Taylor and Mrs. Gross looked at books containing two or three hundred photographs, but were unable to pick out the robber. The next day Mr. Kellum spent two hours looking at "mug shots" but did not recognize anyone.

On September 1, 1978, Detective Combs showed two sets of photographs to those who witnessed the crime. He showed six color photos and five black and white photos to each witness. These photos were spread out in no particular order. Mrs. Gross picked out a color photograph of Ferguson. Mr. Kellum positively identified a black and white photograph of Ferguson. Mr. Kellum also subsequently recognized the defendant while he was sitting in municipal court with several other people on September 15, 1979. He stated he was certain about the identification. Mr. Taylor, Mr. Kellum, and Mrs. Gross identified the appellant in court and were certain in their identifications.

## I.

Appellant contends that the evidence is insufficient to sustain the verdict of the jury.

Appellant was convicted of two counts of a Class B felony under Ind.Code § 35–42–5–1 (Burns 1979). The elements of the felony are set forth in the statute as follows:

"A person who knowingly or intentionally takes property from another person or from the presence of another person:

(1) By using or threatening the use of force on any person; or

(2) By putting any person in fear;

commits robbery, a Class C. felony. However, the offense is a Class B. felony if it is committed while armed with a deadly weapon, . . ."

The evidence included eyewitness testimony of the two victims. The testimony of both showed that appellant came into their store, then left. He returned to the store, pulled out a gun, vaulted onto the counter, held the gun to Mr. Kellum's head, made the victims drop their wallets and forced them into a bathroom. The victims stated they were afraid. When Mr. Kellum looked out the door appellant screamed at him to get back into the bathroom or he would be shot. When the robber left, both wallets were gone. Kellum saw the appellant twice in good lighting at close range. He testified that because he had been the victim of a previous robbery, he took special note of the robber's physical characteristics. Taylor saw the robber twice, once within two or three feet. Martha Gross testified that she was close enough to "have kissed him." In *Proctor v. State*, (1979) Ind., 397 N.E.2d 980, we reiterated our standard for review and found the testimony of victims was sufficient to support the jury's verdict on three counts of armed robbery as follows:

"On appeal, we will examine only the evidence most favorable to the State and all reasonable inferences to be drawn therefrom, in order to determine if there existed sufficient evidence of probative value to support the jury's verdict. (citation omitted) We will neither weigh the evidence nor judge the credibility of the witnesses."

Under these well-established principles of appellate review we find the testimony of the victims and the other witness in the present case sufficient to support the jury's verdict.

## II.

■ Appellant claims that he was denied his presumption of innocence throughout his trial and that the trial court did not reconcile all doubts and uncertainties in his favor. He claims that all the evidence showed was that he had a mere opportunity to commit the offenses and that there was a mere suspicion that he committed the offenses. We find no merit in this contention. The jury was given the following instructions:

### "INSTRUCTION NO. 3

Under the law of this State you are the sole judges of both the law and the evidence and you must presume that the Defendant is innocent. You must continue to believe he is innocent throughout the trial, unless the State proves that the Defendant is guilty, beyond a reasonable doubt, of every essential element of the offense charged. The burden of proof herein is on the State alone and never shifts to the Defendant.

"Since the Defendant is presumed to be innocent, he is not required to present any evidence to prove his innocence, nor to prove, do, or explain anything. If at the conclusion of the trial, there remains in your mind a reasonable doubt concerning the Defendant guilt, you must find him not guilty.

### INSTRUCTION NO. 4

" 'Reasonable doubt' as referred to herein, is a fair, actual and logical doubt that arises in your mind after an impartial consideration of all the evidence and circumstances in the case. It should be a doubt based upon reason and common sense and not a doubt based upon imagination or speculation.

"If, after considering all of the evidence, you have reached such a firm belief in the guilt of the Defendant that you would feel safe to act upon that conviction, without hesitation, in a matter of the highest concern and importance to you, when you are not required to act at all, then you will have reached that degree of certainty which excludes reasonable doubt and authorizes conviction.

"The rule of law which requires proof of guilt beyond a reasonable doubt applies to each juror individually. Each of you must refuse to vote for conviction unless you are convinced beyond a reasonable doubt of the Defendant's guilt, and your verdict must be unanimous."

These instructions clearly define the presumption of innocence and the State's burden in overcoming that presumption. There is no merit to appellant's claim that he was denied the presumption of innocence throughout the trial. *Kennedy v. State*, (1977) Ind., 370 N.E.2d 331.

## III.

■ Appellant next argues that he was denied a fair trial because the jury verdict was based on improper pre-trial identification procedures. Appellant failed to raise this issue at any time prior to or during trial. No Motion to Suppress evidence of the photographic identification was filed. At trial three eyewitnesses and the detective all testified as to pre-trial photographic identifications. Two of them testified about seeing and recognizing the appellant as he sat with others in municipal court. No objection was made at any time to this testimony nor to the witnesses' in-court identifications. There was no objection to the admission of the photographs used in the identification procedures into evidence. In *Nelson v. State*, (1976) 265 Ind. 542, 356 N.E.2d 682, no objections were made to testimony concerning a photographic identification, an encounter with the defendant at the police station, nor to an in-court identification. This Court held that in order for error in the admission of evidence to be preserved for review, a timely and specific objection must be made, and emphasized that no exception is made for identifi-

cation testimony regardless of a possible constitutional infirmity. *Citing Zupp v. State*, (1972) 258 Ind. 625, 283 N.E.2d 540.

In another similar case, *Lewis v. State*, (1978) Ind., 383 N.E.2d 65, it was held that the competent testimony of a single eyewitness is sufficient to support a verdict of guilty. *Citing Lewis v. State*, (1976) 264 Ind. 288, 342 N.E.2d 859. The evidence of identification is sufficient to support the verdict here, and there is no error on this issue.

### IV.

■ Appellant next claims that the jury's finding that the appellant was guilty of two Class B felonies, armed robberies, is contrary to law and the evidence because this requires finding that he was armed with a deadly weapon. Appellant claims that although the witnesses testified that the robber had a gun, there was a possibility that the object was a replica or merely looked like a gun. He claims that since no actual gun was introduced into evidence the verdict should be reversed.

The record shows that both victims gave descriptions of the gun used in the robberies. Mr. Taylor testified that he was familiar with revolvers and automatics and described the pistol as "kind of dull chrome," probably a .22, .25 caliber automatic. Mr. Kellum testified that the gun was either a .22, or .25 automatic, chrome plate, probably quite old, that the chrome was starting to wear off, and added, "I got a very close look at it, it was right at my head."

In *Cox v. State*, (1978) Ind., 372 N.E.2d 176 the same argument was presented. In that case both victims testified that appellant pulled a gun and demanded money. The weapon was described as a small handgun with a blue or gray-blue cast. That evidence was held to be more than sufficient for the jury to have found appellant was armed with a deadly or dangerous weapon. In the present case, the testimony was even more detailed and is more than sufficient to uphold the jury's finding that the appellant was armed with a deadly weapon.

### V.

Appellant next claims that the trial court erred in sentencing him to two consecutive sentences of ten years on each of the two counts of robbery since the crimes involved occurred during one undertaking and were so closely connected as to constitute one criminal activity and not two separate crimes.

Appellant cites the recent case of *Williams v. State*, (1979) Ind., 395 N.E.2d 239, in which this Court held that an individual who robs a business establishment, taking that business' money from four employees, can be convicted of only one count of armed robbery under Ind. Code § 35–42–5–1 (Burns 1975) for his claim of error.

In *Williams, supra,* the money taken belonged to a bank and was taken from four individual tellers who were employees of the bank.

In *Rogers v. State* (1979) Ind., 396 N.E.2d 348, a grocery store's money was taken from two employees. This court applied the reasoning in *Williams, supra,* and decided that when a robber took a grocery's money from each of two employees in a holdup, he was improperly convicted and sentenced on two counts of robbery. The *Williams* case left open the question of whether one can be convicted of more than one count, when taking money from several different persons in the same transaction under a general robbery statute. Recently, in *McKinley v. State*, (1980) Ind., 400 N.E.2d 1378, this Court held that the robbery of a business and the sole proprietor of that business properly constituted two counts of armed robbery.

■ It appears clear from the careful language in *Williams, supra, Rogers, supra,* and *McKinley, supra,* that this Court intends the "single larceny" doctrine to apply only where the property of one business is taken, even though it is taken from several employees or persons. This doctrine does not apply to the situation here where a robber has taken the individual property of separate individuals. In the present case

each man was told to drop his wallet and did so. There was no claim that the wallets taken or the money in them, belonged to Sight and Sound TV Rentals Company. There is no error in appellant's conviction of two separate counts of armed robbery.

## VI.

■ Appellant next claims that the trial court had no authority to sentence defendant Ferguson to consecutive sentences on the two robbery charges. He claims that such sentences were not authorized by the statute, § 35–50–1–2 (Burns 1979), which reads as follows:

"Consecutive and concurrent terms.— (a) Except as provided in subsection (b) of this section, the court shall determine whether terms of imprisonment shall be served concurrently or consecutively.

(b) If a person commits a crime:

(1) After having been arrested for another crime; and

(2) Before the date he is discharged from probation, parole, or a term of imprisonment imposed for that other crime;

the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed."

He contends that unless the provisions of subsection (b) are met, the trial court is not authorized to impose consecutive sentences. There is no merit to this contention. Subsection (a) gives the trial court the discretion to determine whether terms of imprisonment shall be served concurrently or consecutively. Subsection (b) provides for mandatory consecutive sentencing in specific instances. The trial court was acting within its authority in sentencing the Appellant to two consecutive ten year terms. *Mott v. State*, (1980) Ind., 402 N.E.2d 986.

## VII.

■ Appellant Ferguson next claims error in the procedure that resulted in his conviction as an habitual criminal. He claims that the procedure followed constituted two trials and is therefore improper.

The habitual offender statute, Ind. Code § 35–50–2–8 (Burns 1979) provides as follows:

"Habitual offenders.—(a) The state may seek to have a person sentenced as an habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two [2] prior unrelated felony convictions. A person who is found to be an habitual offender shall be imprisoned for an additional fixed term of thirty [30] years, to be added to the fixed term of imprisonment imposed under section 3, 4, 5, 6, or 7 [35–50–2–3— 35–50–2–7] of this chapter.

"(b) After he has been convicted and sentenced for a felony committed after sentencing for a prior unrelated felony conviction, a person has accumulated two [2] prior unrelated felony convictions. However, a conviction does not count, for purposes of this subsection, if:

"(1) It has been set aside; or

"(2) It is one for which the person has been pardoned.

"(c) If the person was convicted of the felony in a jury trial, the jury shall reconvene for the sentencing hearing; if the trial was to the court, or the judgment was entered on a guilty plea, the court alone shall conduct the sentencing hearing, under IC 35–4.1–4–3 [35–50–1A–3].

"(d) The jury (if the hearing is by jury), or the court (if the hearing is to the court alone), may find that the person is an habitual offender only if the state has proved beyond a reasonable doubt that the person had accumulated two [2] prior unrelated felony convictions."

Appellant was charged, as required by subsection (a) on a separate information. He was convicted of a felony in a jury trial, after which the jury reconvened for the sentencing hearing as required by subsection (c). The State called police officers as witnesses, who identified appellant and testified to his prior felony convictions. The State made a prima facie case by introducing Exhibits evidencing prior convictions to

the jury. *Estep v. State*, (1979) Ind., 394 N.E.2d 111. Appellant's fingerprints were compared to previous commitment papers and found to match those of the Elatha Ferguson committed to the Department of Corrections on August 20, 1974, and on March 22, 1976 as a result of felony convictions. The jury was instructed and found that Appellant had accumulated two prior unrelated felony convictions.

The procedures used for sentencing Appellant as an habitual offender complied with those adopted in *Lawrence v. State*, (1972) 259 Ind. 306, 286 N.E.2d 830, and cited favorably in *Howard v. State*, (1978) Ind., 377 N.E.2d 628, *cert. denied* 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708.

Appellant contends that the situation involved here in the finding of the jury that he is an habitual criminal is, in essence, two trials. He relies on *State v. McCormick*, (1979) Ind., 397 N.E.2d 276, for his contention that he was subjected to two trials rather than one trial and one sentencing procedure. The statutory procedure used to determine whether or not to impose the death penalty was challenged in *McCormick, supra.* The aggravating circumstance enumerated under subsection (b)(8) was that the defendant had committed another murder, at any time, regardless of whether he has been convicted of that other murder. This court held the Ind. Code § 35–50–2–9(b)(8) was unconstitutional as applied to McCormick.

The procedures used here to determine whether the defendant is an habitual offender are entirely different. This procedure involves proof of prior convictions. In *McCormick, supra,* we noted that additional constitutional protections underlie proof of criminal convictions as follows:

"We may assume that a conviction was obtained in a constitutionally proper manner. Proof of a conviction therefore carries with it the assurance that the facts underlying that conviction have already been fully established to an untainted, unbiased jury in a forum in which the full protections of the Constitution were afforded to the defendant." 397 N.E.2d at 281.

The habitual offender procedures do not unconstitutionally subject the appellant to two trials. There is no error on this issue.

## VIII.

■ Appellant next claims that the procedure used in his trial and sentencing violated his right to a trial by a fair and impartial jury. He contends that a bifurcated trial in which a jury first considers the guilt of innocence of the defendant on the offense charged and then determines whether or not the defendant is an habitual offender denies a defendant his right to an impartial jury in the second phase of the trial. He is apparently claiming that the jury which convicted him of two counts of Armed Robbery should have been dismissed and a new jury should have been chosen through standard *voir dire* procedures for the habitual offender stage of the trial.

In *Jameison v. State*, (1978) Ind., 377 N.E.2d 404, the appellant made the same argument. This Court stated:

"As to his contention that a separate jury should have been ordered to hear the habitual criminal charge, it is without merit. The trial court complied in all respects with the bifurcated trial requirements of *Lawrence v. State*, (1972) Ind., 286 N.E.2d 830."

There is no error on this issue.

## IX.

■ Appellant next contends that his habitual offender conviction violates a double jeopardy provision which bars a new prosecution if a former prosecution on the same facts resulted in acquittal or conviction of the defendant. The double jeopardy provisions do not apply to the habitual offender statute because there is no new prosecution. The habitual offender statute does not impose punishment for a separate crime, but provides a more severe penalty for the crime charged. *Norris v. State*, (1979) Ind., 394 N.E.2d 144.

## X.

 Appellant also contends that the habitual offender statute violates the Eighth Amendment of the United States Constitution and Article I, § 18 of the Indiana Constitution which prohibits vindictive justice. He is basically claiming that the fifty-year sentence is too severe. Appellant cites no authorities for his position and there is no merit to his contention. *See Loza v. State*, (1975) 263 Ind. 124, 325 N.E.2d 173.

Our court has already specifically determined that the habitual criminal legislation does not impose cruel and unusual punishment. *McMahan v. State*, (1978) Ind., 382 N.E.2d 154.

In *Norris v. State*, (1979) Ind., 394 N.E.2d 144 at 150, we recently restated the purpose of the habitual criminal statute as follows:

[T]his Court has recognized that its purpose is to more severely penalize those persons whom prior sanction have failed to deter from committing felonies. *Bernard v. State*, (1967) 248 Ind. 688, 694, 230 N.E.2d 536, 540. 'The punishment is harsh because the offender is a habitual criminal.' *Id.*"

We hold that the sentence imposed here does not violate the Eighth Amendment to the United States Constitution or Article I, § 18 of the Indiana Constitution.

## XI.

Appellant's final contention is that the habitual offender status is a separate crime and that prosecution was barred by the various statutes of limitations on felony convictions. He contends that his increase in sentence in the present case is upon proof of prior convictions and that this constitutes a prosecution on the basis of those prior offenses, which should be barred by the statute of limitations.

 As stated earlier in this opinion, the habitual offender statute does not involve prosecution for a separate crime. It is not a separate felony and the statutes of limitations for felonies do not apply to the habitual criminal law. This statute merely provides a more severe penalty for the crime charged. *Norris, supra; Howard, supra.* The purpose is to more severely penalize those persons whom prior sanction have failed to deter from committing felonies. *Bernard v. State*, (1967) 248 Ind. 688, 230 N.E.2d 536; *McMahan, supra.* There is no error on this issue.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.