Anthony LASH, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 2–579A143.

Court of Appeals of Indiana, Second District.

Jan. 5, 1981.

Rehearing Denied April 9, 1981.

Harriette Bailey Conn, Public Defender, Carrl L. Darden, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

■ The petitioner, Anthony Lash (Lash), appeals from the denial of his petition for relief under Ind. Rules of Procedure, Post-conviction Rule 1. He was convicted by a jury of three offenses of armed robbery and sentenced to three consecutive ten year terms. His conviction was affirmed in *Lash v. State,* (1977) Ind.App., 367 N.E.2d 10. He now raises the following issues in the denial of his post-conviction relief petition:

(1) Whether the trial court violated his constitutional guarantee against multiple sentences for the same offense by convicting him of three offenses of · armed robbery for his acts within one set of operative circumstances: necessarily raising the question whether robbery from one person of both personal property and property held for a business entity constitutes two offenses of armed robbery.[1]

(2) Whether the trial court erred in sentencing him to serve consecutively jury imposed penalties of ten years determinant on each of three counts of armed robbery.

Affirmed in part, reversed in part.

The facts as presented to us in this appeal are sketchy.[2] September 21, 1975 Lash and two others entered Maria's Pizza, Inc. and at gunpoint took the cash register receipts and money from the purses of two employees, Ruby Lewis and Adean McCollon. Lash was charged with three counts of armed robbery: Count I—robbery of the business property of Maria Pizza, Inc. from Ruby Lewis; Count II—robbery of the per-

---

1. State alleges Lash waived this issue by failure to earmark it as a constitutional issue in its motion to correct errors. While Lash's Petition for Post–conviction Relief and Motion to Correct Errors do not specifically label the error as a violation of the constitutional protection against double jeopardy, the alleged error of multiple punishments for the same offense sufficiently raises a constitutional question. Fur-

ther, P.C.R. 1(a)(3) allows relief from an erroneous sentence, regardless the presence or absence of a constitutional question.

2. Lash did not file the transcript of the original trial with this appeal. Therefore we are constrained to adopt the brief statement of facts set out in Lash's direct appeal at *Lash v. State,* (1977) Ind.App., 367 N.E.2d 10.

sonal property of Ruby Lewis from Ruby Lewis; and Count III–robbery of the personal property of Adean McCollon from Adean McCollon.

## ISSUE I

Lash contends his act of taking the property of three separate entities--a business and two persons--constitutes only one crime where "the armed robbery took place within one store and the whole episode lasted a few minutes." He relies on the theory that multiple takings occurring within "one set of operative circumstances" constitute only one criminal offense.

The Double Jeopardy Clause of the Fifth Amendment protects a defendant from being sentenced twice for the same offense. *Elmore v. State*, (1978) Ind., 382 N.E.2d 893. We must determine whether the three offenses charged are the same for purposes of double jeopardy.

Recent cases have not looked to the "single transaction" or "one occurrence" theory in resolving similar double jeopardy challenges to multiple robbery offenses. *Young v. State*, Ind., 409 N.E.2d 579 (1980). As stated in *Elmore*, a double jeopardy analysis focuses on "whether or not the offenses to be prosecuted and punished are the same, and not whether the offenses spring from the same act or operative circumstances." 382 N.E.2d at 897.

Since there is no merit in Lash's "operative circumstances" argument, there is no question as to the propriety of the judgment on Count III–robbery of the personal property of Adean McCollon from Adean McCollon. *Young, Ferguson v. State*, (1980) Ind., 405 N.E.2d 902. However, there still remains a question whether Count I and Count II are separate offenses. Indiana has not reached the question whether robbery from one person of both personal property and the property of a business entity constitute two offenses of armed robbery. The Indiana Supreme Court, in ruling on similar double jeopardy challenges to multiple robbery offenses, has focused, not necessarily in the same opinion,

on two factors: (1) ownership of the property taken and (2) from whom the property was taken. In *Williams v. State*, (1979) Ind., 395 N.E.2d 239, and *Rogers v. State*, (1979) Ind., 396 N.E.2d 348, the Supreme Court focused on the entity whose property was taken: property belonging to one business entity, though taken from two or more individuals, constitutes one robbery. In *Ferguson* the court held the robbery of the personal property of two employees at the same time at a business situs constituted two offenses of robbery. The court found the single larceny doctrine of *Williams* inapplicable to the taking of the individual property of separate individuals. The *Young* case involved both robbery of business property from an employee and the robbery of personal property from a security guard. The court held the robbery of the property of two separate entities (the business and the security guard) constituted two offenses of robbery. Thus each separate offense of robbery in the aforementioned cases contained a separate person from whom the taking of property of separate entities occurred; however, the taking from more than one person property of a single business entity did not constitute separable offenses of robbery.

The recent case of *McKinley v. State*, (1980) Ind., 400 N.E.2d 1378, might suggest two offenses of robbery occur when one person is relieved of both his personal property and property he holds for a business entity. However, the facts of the case do not support this broad interpretation and we hold that one offense of robbery occurs when personal property and the property of a business entity are taken from one person simultaneously.

In *McKinley* the defendant entered a pharmacy and ordered an employee to empty the cash register. He then took personal property from the owner of the pharmacy and ordered him "to turn over store money." Defendant was charged with and convicted of two counts of armed robbery and the Indiana Supreme Court upheld the dual convictions against a double jeopardy challenge. While the published opinion does

not include the charging information, our independent examination of the record revealed that the separate counts charged the defendant with (1) robbery from the employee of the pharmacy property and (2) robbery from the owner of the owner's personal property. Thus the court's finding of two offenses of armed robbery is limited to the existence of two persons from whom the property of different entities was taken.

Our position is further supported by the earlier cited *Young* case. In interpreting the *McKinley* case, as distinguished from the *Rogers* and *Williams* cases, the *Young* court stated:

> "*McKinley v. State, supra*, was distinguished . . . upon the basis that property, although taken in one occurrence, was the *property of two separate entities and was taken from two separate persons.*" (our emphasis)

The recent case of *Hatcher v. State*, Ind., 410 N.E.2d 1187 (1980) is consistent with this limitation. Therein the court found three separate offenses of armed robbery occurred when in one criminal episode at a business situs the defendant took (1) the business owner's personal property, (2) an employee's personal property, and his accomplice took (3) the business property

from a second employee. The court's statement that "three robberies thus occurred with three victims"[3] the business and two employees is consistent with our position because it is clear the property of three entities was taken from three separate persons. We reiterate that in the cases of *Williams, Rogers, Ferguson*, and *Young* each separate offense of robbery contained a separate person from whom the taking occurred.

■ To claim two robbery offenses the State would have to present two sets of the elements necessary to a robbery offense. The offense of robbery, as defined by the statute relevant to this time frame, IC 35–13–4–6 (Burns Code Ed. 1975), provides in pertinent part:

> "Whoever takes from the person of another any article of value by violence or by putting in fear is guilty of robbery . . ."

Necessary elements include a (1) taking (2) by violence or putting in fear. Seemingly the commission of two offenses of robbery against the same person would require placing that person twice in fear.[4] While some of the language of the *McKinley* case[5] is susceptible to the interpretation that the owner of the pharmacy was twice placed in

---

3. The court's reference to (1) a business as a "victim", *Hatcher v. State*, Ind., 410 N.E.2d 1187 (1980) and to (2) the "robbery of a business" is confusing. *McKinley v. State*, (1980) Ind., 400 N.E.2d 1378. Robbery, as defined by the relevant statute, IC 35–13–4–6 (Burns Code Ed. 1975), requires a taking "by violence or by putting in fear." This requirement presupposes a human victim. In the absence of a human victim, a taking would be a theft rather than a robbery.

4. While we find the element of "placing in fear" a necessary consideration to our determination that only one offense occurred when Ruby Lewis was robbed of her personal property and business property, we note the "business robbery cases" (only one robbery occurs when two or more persons are robbed of property belonging to one business entity, *Williams, Rogers*) seemingly disregard the fact that multiple persons have been placed in fear. However, the *Williams* case did note the vital distinction between robbery and theft (the "placing in fear" element) in distinguishing the earlier case of *Furnace v. State*, (1899) 153 Ind. 93, 54 N.E. 441, in which only one *theft* occurred

when personal property was taken from two separate persons in one occurrence.

5. "The Norwaldo Pharmacy is a business establishment. The robbery of that business in the case at bar constituted one count of armed robbery. This is not a case in which a defendant robbed an individual of various belongings in a personal setting. Rather, petitioner robbed a business, an impersonal setting to anyone other than a regular customer. When petitioner relieved the store owner of his personal wristwatch and wallet, his actions took on a different character. He wronged an individual by robbing both that individual and that individual's business. The record reveals that after he took the watch from Mr. Steinkeler, petitioner kicked Mr. Steinkeler in the face. We do not find that 'stripped down to the basic reality' the robbery of the pharmacy and Herman Steinkeler 'constituted a unitary transaction.' *United States v. Hopkins* (1972) 150 U.S. App.D.C. 307, 314, 464 F.2d 816, 823."

fear, once for the taking of his business property and once for his personal property, careful reading reveals *McKinley* did not reach the "twice–in–fear" issue. The questionable language was directed to defendant's limited argument that only one robbery occurred since both the business and personal property belonged to the same person. This issue is distinct from ours: whether one person can be robbed twice by taking from that person the property of two separate entities.

Under the restrictions of the Double Jeopardy clause a person cannot be twice convicted of the same offense arising from the same proscribed conduct. Therefore, in order to sustain the convictions for more than one offense of robbery arising from contemporaneous conduct it is imperative that close examination be given to not only the criminal charge but also the evidence supporting the several charges of distinct robberies.

■ A robbery, simplistically stated, requires a placing in fear or violence and a taking of property from the person (theft from the person). We first examine the theft element. Two cases have focused on the ownership of property taken as relevant to the double jeopardy challenge to multiple robbery convictions. *Williams, Rogers.* However, consideration of ownership is inimical to the single larceny doctrine, which utilizes the "contemporaneous conduct" or "unitary transaction" test for determining what conduct constitutes a theft. The doctrine is set out in *Holt v. State*, (1978) Ind.App., 383 N.E.2d 467, 472:

"[W]hen several articles of property are taken at the same time, from the same place, belonging to the same person or to several persons; there is but a single 'larceny,' i. e., a single offense. *See, e. g. Furnace v. State*, (1899) 153 Ind. 93, 54 N.E. 441; *Bell v. State*, (1873) 42 Ind. 335; *Jackson v. State*, (1860) 14 Ind. 327. *See also*, 52A C.J.S. *Larceny* §§ 53, 54 (1968). The rationale behind this rule is that the taking of several articles at the same time from the same place is pursuant to a single intent and design. *See*

*State v. Roberts*, (1972) 210 Kan. 786, 504 P.2d 242; *State v. Vining*, (1970) 2 Wash. App. 802, 472 P.2d 564, 53 A.L.R.3d 390. *See also*, 2 R. Anderson, Wharton Criminal Law and Procedure § 450 (1957). Neither the particular ownership nor the particular articles give character to the act of theft, but are merely a part of the description of the particular offense committed."

■ Under single larceny "a theft" encompasses all the property seized in one contemporaneous criminal act, regardless of its ownership, type, or from whom it is taken. In other words, multiple takings in one contemporaneous act constitute only one theft.

■ The single larceny doctrine has been traditionally limited to discussions of offenses against property, i. e., theft, but it is equally applicable to the theft element of robbery as an included offense. Therefore, under the offense of robbery only one theft can arise from contemporaneous conduct regardless of the number of items taken or the number of owners.

■ The fear element, our second consideration, distinguishes robbery from theft, i. e., it is a separate element. This element presupposes the human victim is in fear or subjected to violence, switching the focus to human safety (Offenses Against the Person) as opposed to the proprietary emphasis in theft (Offenses Against Property). The single larceny doctrine, although applicable to the theft element, does not apply to the fear element. Our concern in robbery is with the protection of each individual human life. Each person brought within the robber's circle of terror is an additional and separate interest sought to be protected by the statute.

■ The robbery statute specifically speaks not only in terms of a taking but also of *an* individual being placed in fear or subjected to violence. We conclude the legislative intent is that each person has a sanctity that is to be protected. Thus, while the courts have chosen to diminish the importance of the amount, type or owner-

ship of property we will not similarly emasculate the element of fear in the robbery statute. Placing multiple persons in fear and taking property from them constitutes multiple offenses of robbery. Proof of the element of fear is separate and distinct as to the identity of the person from whom the property is taken although, due to the single larceny doctrine, proof of the item taken or its ownership, regardless of how multiple, can establish but one theft. Therefore, we conclude, there may be as many offenses of robbery as there are persons placed in fear or subjected to violence and from whom property is taken.

In summary, we conclude the proper analysis as to the existence of multiple robberies requires focusing on the person from whom the property is taken by force or by putting in fear: If one person, one robbery; if multiple persons, as many robberies as there are persons who are in fear or subjected to violence and from whom property is taken.

The Indiana cases previously discussed fall within this analysis with the exception of *Williams* and *Rogers*. Under this analysis, four robberies occurred in *Williams* and two robberies occurred in *Rogers* because multiple persons were placed in fear or subjected to violence although property belonging to same entity was taken from each person. However, the cases subsequent to *Williams* and *Rogers*, specifically, *McKinley, Ferguson, Young* and *Hatcher*, are consistent with this analysis and cast doubt on the continued validity of the *Williams* and *Rogers*, result. This is especially true since *McKinley, Ferguson, Young* and *Hatcher* can be logically construed as requiring a stricter test for the existence of multiple robberies–a separate fear or violence *and* the taking of a separate person's property from each separate person.

We conclude defendant committed only one offense of robbery in taking the victim's personal property and property she held for a business entity and therefore, consistent with the restrictions of the Double Jeopardy clause, either Count I or II must be dismissed.

ISSUE II

Lash contends it was an abuse of discretion for the trial judge to order the jury imposed penalties of ten years on each count of armed robbery to run consecutively. We find no abuse of discretion.[6]

In a post–conviction proceeding, the petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence. *Walker v. State*, (1978) 267 Ind. 649, 372 N.E.2d 739. We will reverse only where the evidence is without conflict and leads unerringly to but one conclusion and the trial court has reached an opposite conclusion. *Rinard v. State*, (1979) Ind., 394 N.E.2d 160.

IC 35-12-1-1 (Burns Code Ed. 1975) sets out the penalty provisions applicable to the offense of armed robbery. It provides in pertinent part:

"The penalty imposed by this chapter [section] is to be fixed by the court or jury trying the case, which sentence the court shall not have the power to suspend: Provided, That such court shall have the right to provide in the judgment that such term of imprisonment shall not run concurrently with any imprisonment that may be adjudged for any additional crimes being attempted or committed at the same time but that such term of imprisonment shall commence at the expiration of the imprisonment adjudged for any such additional crimes."

The statute authorizes the judge to order the imposed penalties to run consecutively.[7] This authority imposed in the trial judge does not usurp the power of the fact finder

---

6. Of course our discussion on this issue presupposes our earlier determination that the trial court must dismiss either Count I or Count II since they are both the same offense. Therefore, this issue deals with consecutive sentencing for two convictions of armed robbery.

7. Lash does not raise as error, and we therefore do not address, whether the three offenses were committed at the same time for purposes of IC 35-12-1-1 (Burns Code Ed. 1975).

to set the penalty for each offense, as Lash would argue, but only affects how the penalties will be served.

Lash also suggests that the sentencing hearing provided for in IC 35–4.1-4–3 (Burns Code Ed., Supp. 1979), now transferred to 35–50–1A–3 (Burns Code Ed., Repl. 1980), sets the appropriate standard for sentencing and apparently thereby urges the judge's failure to hold a sentencing hearing constitutes an abuse of discretion. At the time of Lash's sentencing, a hearing was not required by statute.[8] The record shows a presentence investigation report was filed and considered by the court prior to sentencing. We find the trial judge acted within the statutory mandates relevant to that time frame and did not abuse the discretion vested in him in ordering consecutive sentences.

Lash's final two contentions, that the judge's imposition of consecutive sentences (1) constitutes cruel and unusual punishment and (2) violates the defendant's constitutional right to a jury trial are without merit. As stated in *Gray v. State*, (1974) 159 Ind.App. 200, 205, 305 N.E.2d 886, 889, "the constitutional prohibition against cruel and unusual punishment is a limitation upon the acts of the General Assembly and not upon the discretion of the trial court acting within the framework of a statute imposing penalties for the offense." Since the consecutive sentencing imposed was within statutory limits, Lash cannot hinge his challenge to the judge's use of discretion on a "cruel and unusual punishment" argument. Secondly, the constitutionality of court–imposed sentencing as opposed to jury–imposed has been upheld. *Wells v. State*, (1979) Ind.App., 397 N.E.2d 1250.

Affirmed as to Count III, reversed as to Counts I or II and remanded to the trial court for dismissal of Count I or Count II.

SULLIVAN, J., concurs.

BUCHANAN, C. J., dissents, with opinion.

BUCHANAN, Chief Judge, dissenting.

The sanctity of *Elmore v. State*, (1978) Ind., 382 N.E.2d 893 and *McKinley v. State*, (1980) Ind., 400 N.E.2d 1378, has been violated. One who knowingly robs a person of business property and personal property at the same time commits *two* robbery offenses.

*Elmore* is the landmark case setting the standard as to what constitutes separate offenses. The focus is on "[w]hether or not the offenses to be prosecuted and punished are the same, and not whether the offenses spring from the same act or operative circumstances." *Elmore v. State*, at 897. Each conviction of a separate offense of robbery "requires proof of facts which the other does not." *Id.* at 899.

In effect, the majority has applied the single larceny doctrine of theft to robbery cases in which property of *more than one* entity is taken. That doctrine prevents conviction of multiple thefts when property of different ownership is taken at the same time and place without the element of violence or putting a person in fear. *Furnace v. State*, (1889) 153 Ind. 93, 54 Ind. 441.

Our supreme court, however, has refused to extend the doctrine beyond robbery cases in which property of *one* entity is taken, stating: "[*Furnace*] deals with what is now theft and not robbery. Theft involves exerting unauthorized control over another's property, and does not involve taking from another by use of force or by putting a person in fear. Ind.Code § 35–43–4–2 (Burns 1979)." *Williams v. State*, (1979) Ind., 395 N.E.2d 239, 247. In *Williams*, only one conviction for robbery was permitted because, although four bank tellers were robbed, all of the property taken was owned by the bank. Convictions of multiple robberies were upheld, however, in *McKinley v. State, supra*. While the majority's examination of the record in *McKinley v. State, supra*, leads them to conclude that robbery

---

**8.** The new criminal code does not apply retroactively since it contains an express savings clause to the effect an offense committed prior to October 1, 1977 is prosecuted and punished under the old law. *Turner v. State*, (1980) Ind., 407 N.E.2d 235.

of one person of property belonging to two separate entities results in only one offense of robbery, my interpretation of that case is to the contrary. This language written by Justice Hunter seems unequivocal:

"[P]etitioner robbed the business, an impersonal setting to anyone other than a regular customer. When petitioner relieved the store owner of his personal wristwatch and wallet, his actions took on a different character. *He wronged an individual by robbing both that individual and that individual's business.*"

*Id.* at 1379 (emphasis added). And in that case the business in question was technically not a separate entity.

The limitation of the single larceny doctrine to robbery cases in which property of one entity is taken, first made in *Williams* and later elucidated in *McKinley*, was reinforced in both *Ferguson v. State*, (1980) Ind., 405 N.E.2d 902, and *Hatcher v. State*, (1980) Ind., 410 N.E.2d 1187. In *Ferguson*, multiple convictions were again upheld when items of different ownership had been taken:

It appears clear from the careful language in *Williams, supra, Rogers, supra,* and *McKinley, supra,* that this Court intends the "single larceny" doctrine to apply only where the property of one business is taken, even though it is taken from several employees or persons.

*Ferguson, supra,* at 906.

In *Hatcher* the thrust of the decision is that when the property is of different ownership, and the defendant *intends* to take property of different ownership, multiple robberies occur:

Defendant's assertion is incorrect. He took the personal funds and wristwatch of Virgil Kellermeyer, a store employee, and the personal funds of Bernard Goldman, the owner. His accomplice took the funds of the clothing store from its custodian, Grace Nooe. Three robberies thus occurred with *three victims–Kellermeyer, Goldman and the business establishment. Williams v. State,* supra, was distinguished in *McKinley v. State,* (1980) Ind., 400 N.E.2d 1378, wherein we held that

the appellant committed two offenses when he took the money of the business establishment, a sole proprietorship, and the personal funds and wristwatch of the proprietor. In accord *Young v. State,* (1980) Ind., 409 N.E.2d 579.

*Hatcher, supra,* at 1190 (emphasis added). And the language used interprets the meaning of *McKinley* consistent with my view.

I know of no court in Indiana or elsewhere, and the majority cites none, holding that the *intentional* taking of business property from an employee by violence or by putting in fear and the subsequent *intentional* taking of personal property from the same employee by violence or putting in fear *must* be charged as one robbery.

When Lash took business property from Ruby Lewis, he robbed the business. When he took money from her purse, he robbed her as an individual. Proof of different facts is required to convict of the robbery of the personal property which the other crime (robbery of company property) does not. True the victim is one person holding two kinds of property, but there is nothing in the robbery statute limiting the ownership of articles taken to one person and the case law has developed accordingly.

The majority observes in footnote four that our Supreme Court has not yet reached the "twice–in–fear–issue". I think they have, if any such issue there be. My reading of *Elmore, McKinley* and *Hatcher* leads me inescapably to this conclusion. Can there really be any doubt that both items of different ownership were taken from the same person by violence or by a putting in fear in this case? Different proof showed money was knowingly taken from the purse of employee Ruby Lewis. She hardly relinquished her purse voluntarily. No more was necessary.

I dissent.