

**FILED**

Aug 26 2015, 8:43 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Alan K. Wilson
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Seth Curtis,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | August 26, 2015<br><br>Court of Appeals Case No.<br>18A02-1501-CR-59<br><br>Appeal from the Delaware Circuit Court<br><br>The Honorable Linda Ralu Wolf, Judge<br><br>Trial Court Cause No.<br>18C03-1209-FB-29 |

**Bradford, Judge.**

## Case Summary

[1] On July 8, 2011, Appellant-Defendant Seth Curtis entered a CVS store located in Delaware County. While inside the store, Curtis threatened a customer at gun point. Also at gun point, he ordered the pharmacist to give him certain drugs that were located in a safe within the pharmacy and ordered the pharmacy technician to give him the keys to her vehicle ("car keys"). After the pharmacist and the pharmacy technician complied with his orders, Curtis left the store with the drugs and the pharmacy technician's car keys. Once outside the store, Curtis took the pharmacy technician's vehicle. He later abandoned the vehicle behind a vacant building.

[2] Appellee-Plaintiff the State of Indiana (the "State") subsequently charged Curtis with two counts of Class B felony armed robbery, Class C felony intimidation, and Class D felony auto theft. Following a jury trial, Curtis was found guilty of each of the charged offenses. The trial court subsequently imposed a judgment of conviction against Curtis on each count. The trial court sentenced Curtis to twenty years for each of the Class B felony armed robbery convictions, seven years for the Class C felony intimidation conviction, and two and one-half years for the Class D felony auto theft conviction. The trial court ordered that the sentences for the Class B felony convictions be served concurrently to each other but consecutive to the sentences imposed for the Class C felony intimidation and the Class D felony auto theft convictions.

[3] On appeal, Curtis contends that the State presented insufficient evidence to sustain his convictions. He also contends that the imposition of judgment of conviction against him and a sentence for both of the armed robbery counts and

for both the armed robbery and auto theft counts violated the single larceny rule. We affirm.

# Facts and Procedural History

[4] At approximately 9:00 a.m. on July 8, 2011, a man, who was subsequently identified as Curtis, wearing a gray sweatshirt, jeans, a black turtleneck, a black face mask on top of his head, and a black glove on his left hand passed in front of the entrance to the CVS store located at 415 E. McGalliard Road in Delaware County. Surveillance video from the CVS store showed Curtis, who was carrying a plastic bottle containing blue liquid, walk in front of the entrance toward a trash can that is located just to the left of the entrance. Curtis momentarily moved out of the area covered by the surveillance video before immediately re-entering the area covered by the surveillance video. Curtis then entered the CVS. Curtis did not have the plastic bottle containing blue liquid in his hands when he entered the store.

[5] Once in the store, Curtis approached the pharmacy area of the store. Upon arriving at the pharmacy area, Curtis removed a black handgun from his pocket. Curtis approached Jeffrey Lightner, a regular customer of the CVS who was standing at the drop-off area of the pharmacy waiting to have a prescription filled, and told Lightner "don't f'ing look at me … [o]r I will shoot you." Tr. p. 83.

[6] Nariman Al Shweiki was the pharmacist on duty when Curtis arrived at the pharmacy counter. Shweiki observed Curtis climb over the pharmacy counter before pointing his gun at her head and ordering her to give him Opana pills. Shweiki responded to Curtis's demand by opening the safe and placing the bottles of Opana pills in a bag for him to take. Shweiki was the only person who could give Curtis the bottles of Opana pills because the pills are a controlled substance which is stored in a safe, and only the pharmacist knows the code to open the safe.

[7] After ordering Shweiki to give him the Opana pills, Curtis turned, pointed his gun at the pharmacy technician on duty, Rebekah Williams, and demanded that Williams give him her car keys. Curtis repeated his demand three times before Williams complied. Before leaving the pharmacy but while still pointing his gun at Williams, Curtis asked Williams what kind of vehicle she drove. Williams answered that she drove a gold Chrysler Pacifica. Curtis then left the CVS carrying the bag containing the Opana pills and Williams's car keys.

[8] Upon responding to the scene shortly after the robberies, the investigating officers recovered a plastic Powerade bottle containing blue liquid from the trash can that is located just to the left of the entrance to the CVS. Although the robberies occurred on a warm day in July, the plastic bottle was cool to the touch and had condensation on it. The plastic bottle recovered from the trash can looked like the one carried by Curtis immediately before he entered the store and carried out the robberies. Nothing else found in the trash can resembled a plastic bottle containing blue liquid. Shweiki and Williams

testified that to their knowledge, the trash can in question was usually emptied daily. Williams also opined that the trash can must have been emptied the night before as it was not full at the time that the robberies occurred.

[9] While on his way to the CVS store, one of the investigating officers subsequently spotted Williams's vehicle parked behind a vacant building. The vehicle was unoccupied and the keys were in the ignition. There were no other vehicles located behind the building.

[10] A few days later, investigating officers received a call from Jay Mosier. Mosier informed the officers that on the morning in question, he had been eating in the back parking lot of the McDonalds restaurant located at McGalliard Road and Granville Avenue when he observed a white man running from behind a building that he believed to be vacant. Mosier observed the man approach a "rough looking" burgundy car, throw something inside, and climb in before quickly driving off. Tr. p. 253. The building described by Mosier was the same building behind which investigating officers located Williams's vehicle. Investigating officers also subsequently learned that on the date of the robbery, a maroon 2004 Pontiac Grand Prix was registered to Curtis's then-wife.

[11] On September 14, 2012, the State charged Curtis with Count I – Class B felony armed robbery, Count II – Class B felony armed robbery, Count III – Class C felony intimidation, and Count IV – Class D felony auto theft. The trial court conducted a jury trial on November 19 and November 20, 2014. During trial, Kimberly Marshall, a forensic biologist with the Indiana State Police

Laboratory testified that she conducted DNA analysis on the plastic bottle recovered from the crime scene and on a sample provided by Curtis. Marshall testified that her analysis demonstrated that Curtis's DNA profile matched the DNA recovered from the plastic bottle recovered from the crime scene within a statistical probability of one to three hundred and thirty billion (330,000,000,000). Marshall further testified that she was able to reach the conclusion that, in the absence of an identical twin, Curtis was the source of the DNA recovered from the plastic bottle "to a reasonable degree of scientific certainty." Tr. p. 206.

[12] Following the conclusion of trial, the jury found Curtis guilty as charged. The trial court subsequently entered a judgment of conviction against Curtis on all four counts. On January 8, 2015, the trial court sentenced Curtis as follows: Count I – twenty years, Count II – twenty years, Count III – seven years, and Count IV – two and one-half years. The trial court ordered that the sentences imposed on Counts I and II be served concurrently to each other, but consecutively to the sentences imposed on Counts III and IV. The trial court also ordered that the sentence imposed in the instant matter be served consecutively to Curtis's sentences in three unrelated criminal matters. This appeal follows.

# Discussion and Decision

[13] On appeal, Curtis raises two contentions: (1) that the evidence is insufficient to sustain his convictions and (2) that the imposition of a judgment of conviction

against him and a sentence for both Counts I and II and both Counts II and IV violate the single larceny rule. We will discuss each claim in turn.

# I. Sufficiency of the Evidence

[14] Curtis contends that the evidence is insufficient to sustain his convictions for two counts of Class B felony armed robbery, Class C felony intimidation, and Class D felony auto theft.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

The version of Indiana Code section 35-42-5-1 which was in effect on July 8, 2011, provides that "[a] person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person … commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant." The version of Indiana Code section 35-45-2-1 that was in effect on July 8, 2011, provides that "(a) A person who communicates a threat to another person, with the intent … that the other person engage in conduct against the other person's will … commits intimidation, a Class A misdemeanor. (b) However, the offense is a: … (2) Class C felony if, while committing it, the person draws or uses a deadly weapon." The version of Indiana Code section 35-43-4-2.5(b) that was in effect on July 8, 2011, provides that "[a] person who knowingly or intentionally exerts unauthorized control over the motor vehicle of another person, with intent to deprive the owner of: (1) the vehicle's value or use … commits auto theft, a Class D felony."

On appeal, Curtis does not challenge the sufficiency of the evidence to prove the individual elements of each of the above-stated offenses. He merely challenges the sufficiency of the evidence to prove that he was in fact the perpetrator who committed the acts in question. Specifically, Curtis challenges the sufficiency of the evidence to prove that the bottle containing blue liquid that contained his DNA and was found in the trash outside the CVS immediately after the robberies took place was the bottle containing blue liquid

that was in the perpetrator's hands immediately before the perpetrator entered the CVS.

[17] Again, surveillance video from the CVS store shows the perpetrator, who was carrying a plastic bottle containing blue liquid, walk in front of the entrance toward a trash can that is located just to the left of the entrance. The perpetrator momentarily moves out of the area covered by the surveillance video before immediately re-entering the area covered by the surveillance video. The perpetrator then enters the CVS. The perpetrator does not have the plastic bottle containing blue liquid in his hands when he enters the store. Once in the store, the perpetrator makes his way to the pharmacy area where he completes the robberies. After completing the robberies, the perpetrator exits the store.

[18] Upon responding to the scene shortly after the robberies, investigating officers recovered a plastic Powerade bottle containing blue liquid from the trash can that is located just to the left of the entrance to the CVS. Although the robberies occurred on a warm day in July, the plastic bottle was cool to the touch and had condensation on it. The plastic bottle recovered from the trash can looked like the one carried by the perpetrator immediately before he entered the store and carried out the robberies. Nothing else found in the trash can resembled a plastic bottle containing blue liquid. Shweiki and Williams testified that to their knowledge, the trash can in question was usually emptied daily. Williams further testified that she believed that the trash can must have been emptied the night before as it was not full at the time of the robberies. The above-stated evidence supports the inference that the perpetrator threw the

plastic bottle into the trash can just before he entered the store and committed the robberies.

[19] Further, the evidence demonstrates that Curtis's DNA was subsequently recovered from the plastic bottle in question. Again, Marshall testified that Curtis's DNA profile matched the DNA recovered from the plastic bottle within a statistical probability of one to three hundred and thirty billion (330,000,000,000). As such, Marshall testified that she was able to reach the conclusion that, in the absence of an identical twin, Curtis was the source of the DNA recovered from the plastic bottle "to a reasonable degree of scientific certainty." Tr. p. 206. In light of the evidence supporting the inference that the perpetrator threw the plastic bottle into the trash can just prior to committing the robberies and the DNA evidence linking Curtis to the plastic bottle, we conclude that Curtis's claim that the State failed to connect the bottle to the perpetrator or to prove that he was the perpetrator is without merit. Curtis's claim to the contrary effectively amounts to an invitation for this court to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

## II. Single Larceny Rule

[20] Curtis also contends that the imposition of a judgment against him and a sentence for both Counts I and II and both Counts II and IV violate the single larceny rule. The single larceny rule has historically provided that "when several articles of property are taken at the same time, from the same place, belonging to the same person or to several persons there is but a single 'larceny',

*i.e.* a single offense." *Raines v. State*, 514 N.E.2d 298, 300 (Ind. 1987) (emphasis added). "The rationale behind this rule is that the taking of several articles at the same time from the same place is pursuant to a single intent and design." *Id*. "If only one offense is committed, there may be but one judgment and one sentence." *Id*. However, it is important to note that, although the single larceny rule has long been entrenched in Indiana law, overtime, the Indiana Supreme Court has severely limited its application.

## A. Counts I and II

[21] Curtis argues that the imposition of judgment against him and a sentence for both Count I – Class B felony armed robbery and Count II – Class B felony armed robbery violate the single larceny rule. In making this argument, Curtis claims that the taking of the Opana pills from Shweiki, in her capacity as an employee of CVS, and the taking of the car keys from Williams, in her personal capacity, were part of a "single larceny" because the taking of both occurred within seconds of each other at the same place, *i.e.*, in the pharmacy area of the CVS store. For its part, the State argues that the taking of the Opana pills was wholly distinct from the taking of Williams's car keys, and, as such, the takings constituted separate and distinct criminal acts which do not amount to a single larceny.

[22] In arguing that the taking of the Opana pills from Shweiki and the car keys from Williams constituted a single larceny, Curtis relies on our prior opinion in *Jenkins v. State*, 695 N.E.2d 158 (Ind. Ct. App. 1998). However, we find *Jenkins*

to be inapposite. *Jenkins* involved the resolution of a double jeopardy question under the same evidence test rather than the single larceny rule. In *Jenkins*, the defendant took the victim's car, and after driving around in it with the victim, refused to give the victim her purse before letting the victim out of the car. *Id.* at 160. Following trial, the defendant was convicted of both carjacking and robbery. *Id.* The robbery charge was based both upon the defendant's taking of the victim's car and purse. *Id.* at 161. On appeal, we concluded that because both crimes, as charged, involved the defendant taking a motor vehicle from another person by using or threatening the use of force or by placing the other person in fear, the defendant's convictions for both carjacking and robbery violated the prohibitions against double jeopardy.[1] *Id.* at 161-62. Unlike in *Jenkins*, here, the charging information for the two counts of armed robbery contained separate and distinct facts and allegations and did not contain the factual overlap that was present in *Jenkins*.

[23] In *Ferguson v. State*, 273 Ind. 468, 470, 405 N.E.2d 902, 904 (1980), the defendant entered a rental facility and proceeded to rob two different employees of their wallets. Following trial, the defendant was convicted of two separate counts of armed robbery. *Id.* at 469, 405 N.E.2d at 903. Upon review, the Indiana Supreme Court noted that while the single larceny rule would apply to

---

[1] To the extent that *Jenkins* discussed the single larceny rule, we noted that the fact that the State charged the defendant with the robbery of both the car and the purse under a single count indicated that the State believed the taking of both the car and the purse to be a single larceny.

a situation where the property of a single business is taken from numerous employees, *e.g.*, a bank robbery where the perpetrator takes cash from multiple bank tellers, the single larceny rule "does not apply to the situation here where a robber has taken the individual property of separate individuals." *Id.* at 475, 405 N.E.2d at 906.

In *McKinney v. State*, 272 Ind. 689, 400 N.E.2d 1378 (1980), the Indiana Supreme Court considered whether the robbery of the victim's personal belongings and the robbery of money belonging to the pharmacy, which was a sole proprietorship owned by the victim, constituted only one armed robbery under the single larceny rule. In finding that the two robberies did not constitute only one armed robbery under the single larceny rule, the Indiana Supreme Court stated as follows:

> The [pharmacy] is a business establishment. The robbery of that business in the case at bar constituted one count of armed robbery. This is not a case in which a defendant robbed an individual of various belongings in a personal setting. Rather, petitioner robbed a business, an impersonal setting to anyone other than a regular customer. When petitioner relieved the store owner of his personal wristwatch and wallet, his actions took on a different character. He wronged an individual by robbing both that individual and that individual's business.

*Id.* at 691, 400 N.E.2d at 1379. The Indiana Supreme Court held that it did "not find that 'stripped down to the basic reality' the robbery of the pharmacy and the robbery [of the victim] constituted a unitary transaction." *Id*. at 691, 400 N.E.2d at 1379. As such, the Indiana Supreme court held that the takings

did not constitute only one armed robbery under the single larceny rule. *Id.* at 691, 400 N.E.2d at 1379.

[25] In the instant matter, the record demonstrates that after approaching the pharmacy and climbing over the pharmacy counter, Curtis pointed his gun at Shweiki's head an ordered her to give him Opana pills. Shweiki responded to Curtis's demand by opening the safe and placing the bottles of Opana in a bag for Curtis to take. Shweiki was the only person who could give the bottles of Opana pills to Curtis because the pills are a controlled substance which is stored in a safe to which only the pharmacist knows the code. The robbery of property belonging to CVS was completed once Shweiki handed Curtis the bag containing the Opana pills.

[26] After ordering Shweiki to give him the Opana pills, Curtis turned, pointed his gun at Williams, and demanded that Williams give him her car keys. Curtis repeated his demand three times before Williams complied. Before leaving the pharmacy, but while still pointing his gun at Williams, Curtis asked Williams what kind of vehicle she drove and Williams answered that she drove a gold Chrysler Pacifica. Curtis then left the CVS carrying the bag containing the Opana pills and Williams's car keys.

[27] Upon review we conclude that the facts of the instant matter are similar to the situations presented in *Ferguson* and *McKinney* in that Curtis robbed two separate and distinct persons. He first robbed Shweiki, in her capacity as an employee of CVS, of property belonging to the pharmacy, *i.e.*, the Opana pills.

He then robbed Williams of her personal property, *i.e.*, her car keys. Thus, in light of the Indiana Supreme Court's holdings in *Ferguson* and *McKinney*, we conclude that Curtis's actions did not constitute one single unitary robbery, but rather constituted two separate robberies. *See Ferguson*, 273 Ind. at 475, 405 N.E.2d at 906-07; *McKinney*, 272 Ind. at 691, 400 N.E.2d at 1379; *see also McDonald v. State*, 542 N.E.2d 552, 555 (Ind. 1989) (providing that two separate robberies occurred and appellant was properly convicted of two counts of robbery when he took property from two separate individuals after threatening each individual with the use of force and causing one to be stabbed). Accordingly, we further conclude that the imposition of a judgment against him and a sentence for these two separate robberies did not violate the single larceny rule.

## B. Counts II and IV

Curtis also argues that the imposition of judgment against him and a sentence for both Count II – Class B felony armed robbery and Count IV – Class D felony auto theft violates the single larceny rule. In making this argument, Curtis claims that the taking of Williams's car keys and, once outside the CVS, her vehicle were part of a "single larceny" because although the vehicle was taken from the CVS parking lot outside the store, it appears to have been taken "only seconds" after he took the car keys from Williams. Appellant's Br. p. 15. For its part, the State argues that the taking of Williams's car keys during the armed robbery of the CVS pharmacy was distinct from Curtis's criminal act of

taking of Williams's vehicle from the CVS parking lot. As such, the State argues that the takings did not amount to a single larceny.

[29] In arguing that the taking of Williams's car keys and the taking of her vehicle constituted a single larceny, Curtis relies on the Indiana Supreme Court's opinion in *Stout v. State*, 479 N.E.2d 563 (Ind. 1985). In *Stout*, the defendant was charged with taking certain items out of the victim's home as well as taking the victim's vehicle out of the attached garage. *Id*. at 568. Finding that an attached garage was part of one's home, *see Gaunt v. State*, 457 N.E.2d 211, 214 (Ind. 1983), the Indiana Supreme Court held that the taking of the items from the home as well as the taking of the vehicle from the attached garage, all of which happened at the same time, constituted a single taking. *Stout*, 479 N.E.2d at 568.

[30] The Indiana Supreme Court, however, has differentiated between its holding in *Stout* and situations where a perpetrator takes property, including car keys, from inside a building and a vehicle from a parking lot outside the building. In *Bivins v. State*, 642 N.E.2d 928, 945 (Ind. 1994), the Indiana Supreme Court noted that the defendant was charged with the theft of the victim's money and credit card from inside his motel room and the victim's automobile from the motel parking lot. The Indiana Supreme Court declined "to deem the [motel] parking lot to be a part of the [victim's] motel room" despite the defendant's claim that when he took the victim's personal property from within the motel room, he also took the victim's car keys. *Id*.

[31]     Also, in *J.R. v. State*, 982 N.E.2d 1037 (Ind. Ct. App. 2013), *trans. denied*, we found *Stout* to be distinguishable from a situation where a juvenile was convicted of and sentenced for acts which would constitute Class B felony burglary and Class D felony auto theft if committed by an adult. In *J.R.*, the juvenile burglarized a victim's home and took the victim's vehicle from the victim's attached garage. *Id.* at 1038. Citing to *Stout*, the juvenile argued on appeal that the imposition of sentences for both offenses violated the single larceny rule. *Id.* at 1038-39.

[32]     In distinguishing the matter from *Stout*, we noted that in *Stout*, the defendant was charged with two counts of theft. *Id.* at 1039. "There, the only difference between the two theft counts was the identity of the stolen property; everything else was the same, including the violated statute." *Id.* Upon review, we concluded that such similarity did not exist in the matter before the court because in *J.R.*, the juvenile was charged with theft, a violation of Indiana Code section 35-43-4-2 and auto theft, a violation of Indiana Code section 35-43-4-2.5. *Id.* at 1039-40. In concluding that the crimes of theft and auto theft are distinct offenses and that the violation of both does not violate the single larceny rule, we stated as follows:

> At the time that *Stout* was decided, there was no distinct statute for the crime of auto theft. Indiana Code section 35-43-4-2.5 was enacted after the crimes in *Stout* occurred. The enactment of this separate statute indicated the General Assembly's intention that auto theft be considered a completely separate offense from theft and that violations of the two statutes be considered distinct. Therefore, in *Stout*, the defendant was convicted of two counts of

theft, which were identical offenses except for the identity of the property stolen. But here, true findings were made as to theft and auto theft, which are different offenses and violations of different statutes.

*Id.* at 1040 (emphases in original).

[33] Upon review, we conclude that the instant matter is more akin to the situations presented in *Bivins* and *J.R.* than the situation presented in *Stout*. Here, Curtis committed armed robbery by taking Williams's car keys from her from inside the CVS while threatening the use of force and armed with a deadly weapon. After completing the armed robbery, he left the CVS. Curtis then found Williams's vehicle in the public CVS parking lot and stole it. Similar to the Indiana Supreme Court's determination in *Bivins*, we decline to deem the CVS parking lot to be part of the actual CVS pharmacy. In addition, similar to the situation presented in *J.R.*, Curtis was charged with two separate and distinct crimes, *i.e.*, the offenses of armed robbery under Indiana Code section 35-42-5-1 and auto theft under Indiana Code section 35-43-4-2.5. In light of the Indiana Supreme Court's opinion in *Bivins* and our opinion in *J.R.*, we conclude that the taking of Williams's vehicle from the CVS parking lot was a separate and distinct act from the taking of her car keys during the robbery of the pharmacy itself.

[34] Furthermore, we must disagree with Curtis's claim that a judgment of conviction should not have been imposed against him and that he should not have been sentenced for both armed robbery and auto theft because theft is an

included offense of robbery. In *Potter v. State*, 451 N.E.2d 1080 (1983), the defendant was convicted of both robbery and theft. The robbery count related to the taking of the victim's personal items, including jewelry, money, car keys, and other items, from within the victim's apartment. *Id.* at 1082. The theft count related to the taking of the victim's automobile. *Id.* In finding that the trial court properly imposed judgment against and sentenced the defendant on both counts, the Indiana Supreme Court stated that:

> Even though one part of the general transaction involved the taking of property from the victim, it can certainly be said that the taking of the automobile was an additional theft, unrelated to those in the apartment. To that extent, the theft of the automobile does not merge into the robbery conviction.

*Id.* In addition, we also clarified in *J.R.* that the offense of auto theft and the offense of robbery are two distinct offenses. *See* 982 N.E.2d at 1040. Thus, even though Curtis correctly states that, in some situations, theft is an included offense of robbery, we do not believe that auto theft is an included offense of robbery. Curtis's claim that his convictions for both armed robbery and auto theft cannot stand is without merit.

[35] Concluding that the evidence is sufficient to sustain Curtis's convictions and that the imposition of a judgment of conviction and sentence for each of Counts I, II, and IV did not violate the single larceny rule, we affirm the judgment of the trial court.

[36] The judgment of the trial court is affirmed.

May, J., and Crone, J., concur.